**UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| TRI-PHARMA, INC., | CASE NO. |
| Plaintiff, | |
| v. | _____ |
| SAFE HARVEST MEDICAL, LLC f/k/a SAFE HARVEST, LLC; GARRETT MANN; LILLIAN BAY HOLDINGS, INC. n/k/a LILLIAN BAY MEDICAL, INC.; and BRAD BEATTY, | |

**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff Tri-Pharma, Inc. and files this, its Complaint for Damages, Injunctive Relief, and Demand for Jury Trial ("the Complaint") against Defendants Safe Harvest Medical, LLC f/k/a Safe Harvest, LLC ("Safe Harvest"); Garrett Mann; Lillian Bay Holdings, LLC n/k/a Lillian Bay Medical, Inc. ("Lillian Bay"); and Brad Beatty (individually and collectively, "Defendants") and respectfully show this Court as follows:

I. PARTIES, JURISDICTION, AND VENUE

1.      Tri-Pharma is a corporation organized and existing under the laws of the State of Georgia. Tri-Pharma's principal place of business is located in Kennesaw, Georgia.

2.      Upon information and belief, Safe Harvest is a Wyoming limited liability company with its principal place of business in Texas, located at 3801 West Ursula

Ave., Suite B, McAllen, Texas 78503. Safe Harvest may be served through its Registered Agent, Cloud Peak Law Group, P.C., located at 1095 Sugar View Dr., Suite 100, Sheridan, Wyoming 82801.

3.      To the extent that Safe Harvest, LLC is a separate entity from Safe Harvest Medical, LLC, then Tri-Pharma shows that Safe Harvest Medical is a successor-in-interest to Safe Harvest and further reserves the right to add Safe Harvest Medical as a separate defendant in this action.

4.      Defendant Mann is a resident of the State of Texas and, upon information and belief, resides at either 1201 South 1st Street, McAllen, Texas 78501 or 5111 North 10th #287, McAllen, Texas 78504. Defendant Mann may be served with summons and process at either location.

5.      Lillian Bay is a Florida corporation with its principal business in Florida, located at 300 10th Street North, # 346, St. Petersburg, Florida 33705. Lillian Bay may be served through its Registered Agent, Brad M. Beatty, located at 300 10th Street South, # 346, St. Petersburg, Florida 33705.

6.      To the extent that Lillian Bay Holdings L.L.C. is a separate entity from Lillian Bay Medical, Inc., then Tri-Pharma shows that Lillian Bay Medical is a successor-in-interest to Lillian Bay Holdings and reserves the right to add it as a separate defendant in this action.

7.      Defendant Beatty is the Founder and Chief Executive Officer of Lillian Bay. Defendant Beatty is a resident of the State of Florida. Defendant Beatty may be served with summons and process at 300 10th Street South, # 346, St. Petersburg,

Florida 33705. Alternatively, Defendant Beatty may be served with summons and process at either 17172 Horizon Ln, Port Charlotte, Charlotte County, Florida 33948 or 1440 Horizon Rd., Venice, Sarasota County, Florida 34293. All three of these addresses are located in this District.

8.      Each Defendant, along with non-parties Farid Ahmed, a resident of Dubai, United Arab Emirates, and Virtus Facilities Management Services, LLC ("Virtus"), a corporate entity registered and governed by DED Dubai Economic development, are co-conspirators with each other as to the tortious actions set forth herein.

9.      All of the statements referenced in this Complaint, including those by Mr. Ahmed and Virtus, were made – at all times – during the course of, and in furtherance, of the conspiracy set forth herein.

10.     As co-conspirators, statements of each Defendant, along with those by Mr. Ahmed and Virtus, are binding on, and admissible against, the others. *See, e.g.,* Fed.R.Evid. 801(d)(2)(E).

11.     This Court has subject matter jurisdiction over the federal RICO claims raised in this action pursuant to 18 U.S.C.A. § 1964.  This Court has subject matter jurisdiction over the remaining non-federal claims raised herein pursuant to 28 U.S.C. §1367(a), as the remaining claims are so related to federal RICO claims as to form part of the same case or controversy under Article III of the United States Constitution. The Court also has subject matter jurisdiction over the remaining non-federal claims raised in this action pursuant to 28 U.S.C. § 1332(a)(1), as there is

diversity of citizenship between Tri-Pharma and each of the Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fee claims.

12.     Venue is proper in this judicial district pursuant to 18 U.S.C.A. § 1965 and 28 U.S.C.A. § 1391 because Lillian Bay and Defendant Beatty are subject to personal jurisdiction in this judicial district, reside in this district, and transact their affairs in this district. The remaining Defendants are joint tortfeasors and/or obligors with Lillian Bay and Defendant Beatty, whether as partners, joint obligors, or joint venturers.

## FACTUAL BACKGROUND

### I. The Contract

13.     Tri-Pharma is involved in the wholesale purchase and sale of medical products, including personal protective equipment ("PPE").

14.     Lillian Bay and Defendant Beatty are involved in the purchase and sale of medical products, including PPE.

15.     Safe Harvest and Defendant Mann are involved in the import and distribution of goods from China, including PPE.

16.     Upon information and belief, Lillian Bay and Safe Harvest (individually and collectively, "Selling Defendants") sourced the PPE at issue from Virtus, which manufactured the PPE in China.

17.     Whether as partners, joint venturers, or otherwise, Safe Harvest and Lillian Bay are involved in the joint acquisition and sale of PPE, such as N95 face masks, and other goods in the United States.

18.     An example of marketing materials distributed by both Selling Defendants for the sale of PPE accompanies this Complaint as Exhibit 1.

19.     Selling Defendants agreed to sell 1 million N95 face masks ("the Masks") to Tri-Pharma for a total of $3.85 million, as reflected on the Purchase Orders accompanying this Complaint as Exhibit 2.

20.     Tri-Pharma had existing contracts to sell the Masks to two federal VA Medical Centers. *See, e.g.,* Exhibit 2.

21.     Tri-Pharma would have realized a gross profit on this transaction because its sale price for the Masks to the VA medical centers was greater than the price it would have paid for the Masks to Selling Defendants ($3.85 million).

22.     Pursuant to its agreement with Selling Defendants, Tri-Pharma tendered two separate wires of $1,925,000 each to two escrow agents designated by Selling Defendants. Together, these wires totaled the purchase price of $3.85 million ("the $3.85MM Deposit").

23.     Defendants Mann and Safe Harvest's attorney described the purported transaction in Exhibit 3 hereto. As set forth herein, Defendants Mann and Safe Harvest's description in Exhibit 3 is neither complete nor accurate.

24.     The $3.85MM Deposit was intentionally and purposefully kept in escrow, with escrow agents designated and chosen by Selling Defendants. Tri-

Pharma only agreed to release the $3.85MM Deposit from escrow after Selling Defendants represented that the Masks were available for shipment and were, in fact, at the departure port pending the release of the $3.85MM Deposit from escrow. [*See, e.g.,* Exhibits 4 (redacted), 5 (redacted), and 6 (redacted).]

25.     On April 22, 2020, Tri-Pharma approved the release of half of the $3.85MM Deposit to Virtus in Dubai. [*See* Exhibit 5.] Upon information and belief, this initial wire from Selling Defendants to Virtus in Dubai was for <u>less</u> than half of the $3.85MM Deposit because Selling Defendants retained a portion of the proceeds as their compensation and/or commission.

26.     Safe Harvest received a commission of approximately $266,000, which was paid to Safe Harvest directly from the escrow account and paid by the escrow agent.

27.     Upon information and belief, because Safe Harvest and Lillian Bay were jointly involved in this transaction, Lillian Bay also received a commission of approximately $266,000, which was paid to Lillian Bay directly from the escrow account and paid by the escrow agent.

28.     On May 5, 2020, Tri-Pharma approved the release of balance of the $3.85MM Deposit to Virtus in Dubai. [*See* Exhibit 6.] Tri-Pharma approved this release based on Selling Defendants' statements and representations that it was needed before the manufacturer/Virtus would allow the Masks to be shipped out of China. But at that time, Selling Defendants confirmed the Masks were ready and available for shipment for Tri-Pharma.

29.     On May 6, 2020, Selling Defendants wired half ($1,925,000) of the $3.85MM Deposit to Virtus in Dubai. [*See* Exhibit 7.]

30.     Thus, the $3.85MM Deposit was broken up by Defendants into 3 segments: (1) a wire of $1,925,000 to Virtus in Dubai; (2) approximately $532,000 ($266,000 *plus* $266,000) in commissions retained by Defendants and kept in the United States; and (3) another wire of approximately $1,393,000 ($1,925,000 *less* $532,000) to Virtus in Dubai.

## II. The Deceitful Termination and Refund Offer

31.     After the $3.85MM Deposit was wired to Defendants, they invoked "force majeure" due to alleged actions by the Chinese government and induced Tri-Pharma to agree to cancel the contract.

32.     According to Defendants Mann and Beatty, China changed the volume of permitted exports related to PPE and the Masks. [*See*, *e.g.*, Exhibit 4 hereto ("Manufactur [sic] won't have the count till he loads he says, Chinese Gov are making them rearrange shipping pallets so will know when we are loading").]

33.     The alleged adjusted shipping schedule was going to impact Tri-Pharma's commitments to the VA medical centers, its buyers.

34.     As a result, on May 5, 2020, Defendant Mann offered to allow Tri-Pharma to cancel its order for the Masks and for the "funds [the $3.85MM Deposit] returned." [*See* Image 1, below.]

Image 1                              Image 2

      

35.    Although Defendant Garrett indicated that he could find an alternate buyer, and "make more money," [Image 2, above], upon information and belief, Defendants schemed to induce Tri-Pharma to cancel its contract so that they could sell the Masks to this other buyer for "more money."

36.    Then, when Tri-Pharma did not immediately agree to cancel its contract, Defendants told Tri-Pharma on May 12, 2020, that, on May 11, 2020, the Chinese Government had changed its export rules for PPE, as stated below in Images 3 and 4:

Image 3                                Image 4

                   

37.     Based on the new representations from Defendants, Tri-Pharma cancelled its purchase of the Masks on May 12, 2020. At that time, Defendant Mann, on behalf of Defendants, stated:

> Everybody,
> We will be returning you money for this order as Chinese Government sanctions have proven difficult to all of our satisfactions. **The Chinese Government made even more changes yesterday giving two options, return funds or find other similar products for the clients**. Seems that returning the funds is the best option in our situation.
>
> **While being accused of yanking your chains and lying, we will cancel the order and return your funds when we receive them**.

We will update you as soon as we receive the money back.

No further orders shall be placed.

Thank you[.]

[Exhibit 8 at 14 (bold added).]

38.     Upon information and belief, Defendants then sold the Masks to a third-party purchaser for "more money."

39.      On May 14, 2020, Defendant Mann represented that "it will only take a few days . . . to receive the full refund" of the $3.85MM Deposit. [Exhibit 8 at 9.]

40.     Then, on May 28, 2020, Defendant Mann represented that the $3.85MM Deposit would be returned to Tri-Pharma "within next 7-10 days." [Exhibit 8 at 6.]

41.     According to Defendant Mann, as of June 5, 2020, the $3.85MM Deposit was in Dubai, but would be promptly returned to Tri-Pharma. [*See* Exhibit 7 at 5.]

42.     However, Defendants, through Defendants Mann and Safe Harvest, received and controlled the $3.85MM Deposit, and they were the ones who agreed to return it to Tri-Pharma.

- "Hindsight **I should have returned you money** when Wells Fargo goofed up the wires") [Exhibit 8 at 10 (bold added)];

- "Safe Harvest with Brads [Defendant Beatty] permission and signoff will wire Tri Pharma Directly out of Escrow," [*id.* at 2].

43.     From the outset of the parties' cancellation of the sale, it was expected and intended that the $3.85MM Deposit would be returned promptly to Tri-Pharma. [Exhibit 8 at 3 ("the refund date into Tri-Pharma's account on or before Wednesday 06/17/2020").]

44.     Defendants represented to Tri-Pharma that difficulties related to dealings with the Chinese government made the Sale "difficult," leading the parties to agree to "cancel the order and return the funds" to Tri-Pharma.

45.     As explained later in this Complaint, Defendants' attribution of blame to the Chinese government was false. Defendants instead sold the Masks to a third-party for a higher price.

### III. Further Fraudulent Representations and Delays

46.     In response to numerous inquiries regarding the status of the return of the $3.85MM Deposit in June and July, 2020, Defendants informed Tri-Pharma that the funds were en route to it and being processed, but that delays were due to inefficiencies in the international financial system. [*See*, *e.g.*, Exhibits 9, 10, and 11 (excessive pages have been excluded from this exhibit).]

47.     For example, Defendant Beatty told Tri-Pharma that, according to the UAE (*i.e.*, Virtus):

> [t]he first return installment of this payment [the refund] came through ($2Million), [and] [w]e will be processing this payment back to the escrow agent end of this week and the balance payment when we receive it around the 9th July, 2020. I will send you the bank receipts when done for your records.

There is no other problem in the refund as such, this will be sorted on or before 15th July, 2020 (Balance $1,850,000; Total of $3,850,000/1) between [Selling Defendants] and Tripharma.

[Exhibit 9 at 1.]

48.     In late July/early August, 2020, Defendants Mann and Safe Harvest then referred Tri-Pharma to Mr. Ahmed, an executive with Virtus, regarding the $3.85MM Deposit.

49.     Upon information and belief, Defendants directed Tri-Pharma to Mr. Ahmed and Virtus as a means to retain plausible deniability and to pass potential liability to them, as they were residents of Dubai and not readily subject to legal process in the United States.

50.     According to Mr. Ahmed, contrary to Defendants' representations, actions by the Chinese government did not cause Defendants to offer to refund Tri-Pharma its $3.85MM Deposit. Rather, Defendants schemed to terminate the sale of the Masks to Tri-Pharma because Defendants wanted to sell the Masks to another buyer for a higher price.

51.     However, instead of using their proceeds from the sale of the Masks to the third-party purchaser to return the $3.85MM Deposit to Tri-Pharma, Defendants either used the proceeds to purchase additional products to be sold or Defendants and Virtus used the $3.85MM Deposit to fund other aspects of their ongoing business operations.

52.     At the current time, and since August 21, 2020, at the latest, Defendants have been unable or unwilling to return the $3.85MM Deposit to Tri-

Pharma because they are waiting to sell additional PPE products to a third-party to fund the payment to Tri-Pharma.

53.     According to Mr. Ahmed, on August 21, 2020, Defendants, with Virtus, struck a deal with Staples for the sale of masks for $0.40 per mask ("the Staples Deal"), which would net Defendants more than the $3.85MM Deposit owed to Tri-Pharma.

54.     Mr. Ahmed and Virtus then represented that Defendants would be able to return the $3.85MM Deposit to Tri-Pharma. As Mr. Ahmed wrote on or about August 21, 2020 via WhatsApp:

> [8/21/20, 9:38:35 AM] Farid Ahmed: Thanks Todd, we did manage to close the deal with Staples at 40cents. Just this morning.
>
> . . .
>
> [8/21/20, 9:39:37 AM] Farid Ahmed: We are waiting to hear from their attorney to do his stock verification at all sites and then they will pickup with stock site by site and pay us as it's transferred.
>
> [8/21/20, 9:39:46 AM] Farid Ahmed: Hallelujah
>
> . . .
>
> [8/21/20, 9:41:03 AM] Farid Ahmed: And they're gonna repack them under their brand anyway and it will say Medical and they even got FDA approval to repack em
>
> . . .
>
> [8/21/20, 9:54:03 AM] Tri-Pharma, Inc: staples will be a cash up front deal so i can get made whole quickly?
>
> [8/21/20, 9:54:48 AM] Farid Ahmed: Do you want it in parts or in full?

[8/21/20, 9:55:09 AM] Tri-Pharma, Inc: Just depends on the details i think

[8/21/20, 9:55:26 AM] Farid Ahmed: Also, the way, I have structured it they will pay Safe Harvest to reduce complications of making payment to Dubai.

[8/21/20, 9:56:03 AM] Farid Ahmed: **Garrett will immediately see end it to me to reverse our payments per record back to the escrow account**

[8/21/20, 9:56:29 AM] Tri-Pharma, Inc: **To safe harvest's escrow attorneys account**?

[8/21/20, 9:56:48 AM] Farid Ahmed: To you from Dubai. So within 3-5 working days after we get it.

[8/21/20, 9:56:55 AM] Farid Ahmed: **That's correct.**

[8/21/20, 9:57:08 AM] Farid Ahmed: **That's whom I got the payment from**.

[8/21/20, 9:57:18 AM] Farid Ahmed: **We will send it back to them**.

[8/21/20, 9:57:42 AM] Farid Ahmed: **The full 3.8M**

[8/21/20, 10:03:52 AM] Tri-Pharma, Inc: I see. Is it not possible to use the same escrow attorney for my refund and that way all the money doesn't need to go back Dubai? Staples escrows with the franscico Guerrero escrow acct, Francisco directs Tri-Pharma's 3.85m to us and then the difference goes back to Dubai for you?

[8/21/20, 10:08:48 AM] Farid Ahmed: No. **It will either have to come here directly or to SafeHarvest and then to the Escrow Attorneys account**.

[8/21/20, 10:09:07 AM] Farid Ahmed: It's our sale.

[8/21/20, 10:10:02 AM] Farid Ahmed: **So funds will have to come to us and then to you because it's a bigger amount than what's owed to Tripharma**.

   . . .

[8/21/20, 10:15:47 AM] Tri-Pharma, Inc: Why send it ALL back to Dubai to then just send most of it back to the US escrow attorney?

[8/21/20, 10:19:59 AM] Farid Ahmed: Payment will have to come in part or full to our accounts first before for Virtus' accounts.

[8/21/20, 10:21:23 AM] Farid Ahmed: **Then we can instruct Safe Harvest to pay or put the funds back I to the Escrow account where you sent the funds from instead of it coming back to Dubai.**

[8/21/20, 10:21:33 AM] Farid Ahmed: That way it could reach you sooner, I reckon.

[8/21/20, 10:22:16 AM] Farid Ahmed: To set the record straight with Tripharma as a reversal.

[8/21/20, 10:23:20 AM] Farid Ahmed: **That's all. But if you are in agreement of the local arrangement with SH**,. I can request them to do that without sending it to me and then sending it back again.

. . .

[8/21/20, 1:06:16 PM] Tri-Pharma, Inc: **I just need your word that they will follow through with the immediate transfer of full refund and no more B.S stories.**

[8/21/20, 1:32:14 PM] Farid Ahmed: **You have my word.**

55.     Mr. Ahmed continued to represent to Tri-Pharma that Defendants would return the $3.85MM Deposit to it. For example, on August 26, 2020, Mr. Ahmed wrote: "All I know is I am doing everything possible to cash out and pay u immediately."

56.     Mr. Ahmed routinely represented that he was acting in concert with Defendants, telling Tri-Pharma on August 27, that he would "speak to Garrett and send you a partial amount for sure Todd.👍🖼️😊"

57.     It became clear, however, that Defendants were engaged in a Ponzi-type scheme, whereby one deal would fund the next deal, and repayment to Tri-Pharma was contingent on the process continuing.

> [9/9/20, 12:11:11 PM] Tri-Pharma, Inc: Farid im super angry. When we made contact you said could be 3 days to a couple weeks. A couple weeks has come and is now here. This is not right. You can't take 3.85m and push me off for 120 days.  You, Garrett or Brad wouldn't find it right if it was the other way around and I converted your funds on my behalf. I have a family to take care of. This is more than wrong. You have all caused me to miss my commitments while you continue to get yours done. Total B.S. I have been more than patient through this process. There are more eyes on this transaction than you might think and they looking to see it be closed out

> [9/9/20, 12:40:12 PM] Farid Ahmed: **Your choice Todd. I am trying to be amicable. If you want to take that tone and negative approach...your looking at a real wild goose chase with no money for you at the end**.

> I really think we should remain calm and close this and get you paid 100% as soon as this sale closes. Please pray, God eases both of our troubled cash situations. 😔🙏😔🙏

58.     Defendants, through Mr. Ahmed, continued to string Tri-Pharma along, including telling Tri-Pharma that the Staples Deal was close to completion.

> [9/15/20, 10:22:11 AM] Tri-Pharma, Inc: Also, Any update on the staples sale. Have deals we are missing out on. Let's get that behind us and all start making money.  I have some very good opportunities for both of us that could be big reoccurring contracts

> [9/15/20, 10:29:09 AM] Farid Ahmed: 😄trust me...I'm sitting at the edge of my seat. They have appointed an attorney who verified our stock and then confirms to their office clears the payment over to his account. Then comes over again to our premesis does inspection and logistics handover same time. Also releases payment live at site itself.

[9/15/20, 10:31:21 AM] Farid Ahmed: Last week he finished his inspection, and the payment from HQ was transferred to him supposedly on Friday, but it hasn't hit his account until now due to some bank issue. He reckons it should be sorted and cleared by Thursday after which he will schedule the trucks for pickup and visit us at the earliest date they can lift (Friday/next immediate date). Payment wi be transferred to SH same time to their BoA account.

[9/15/20, 10:31:52 AM] Farid Ahmed: **Once it hits, I have already told Garrett to transfer 50% to you immediately.**

[9/15/20, 10:32:39 AM] Tri-Pharma, Inc: Sounds good. Appreciate the update.

59.    Defendants, through M. Ahmed, further represented to Tri-Pharma that the Staples Deal was funded and closed, resulting in $28 million being placed into escrow.

[9/29/20, 7:20:15 AM] Tri-Pharma, Inc: Hi Farid. Somethings very critical has come up and you have me stuck in a hard place. I need my funds back at this point. Any closer to the escrow attorney completing and transferring funds?

[9/29/20, 7:28:45 AM] Farid Ahmed: Hi Todd, **$28,000,000 Million have reflected in the attorneys account Wednesday last week. But due to a hold for compliance check. He can access it only after 10 business days for some reason until all documentation for the sale are clearly submitted**. This has been done by Staples and the attorney on Friday. Awaiting update anytime end of this week or next week latest. This is the update Todd. I am in the same spot as u as the rest as well...Staples has already had a dissgrunted call with all stating their frustration on the delivery as well but don't have a choice, but to wait now.

. . .

[9/29/20, 7:44:07 AM] Tri-Pharma, Inc: Farid, based on my critical situation and based on the above extra time frame, then I need some documentation that can show this. What can you provide me?

[9/29/20, 7:51:03 AM] Farid Ahmed: Non I can share at the moment due to NDA's signed. **I will be getting paperwork during the week from the Attorney addressed to Safe Harvest**. I will share whatever I get which I can

redact and present tonu until u get funds in your account for your comfort...I understand you're predicament and angle. Will support and oblige as soon as I can.

[9/29/20, 7:57:59 AM] Tri-Pharma, Inc: Yes, Unfortunately I have major outside pressure from other parties I have to answer to

[9/29/20, 8:16:28 AM] Tri-Pharma, Inc: Also bank statements, deposit slips, and wire advices should not be covered by NDA, especially with account numbers redacted

[9/29/20, 8:23:05 AM] Farid Ahmed: Yes, these are not available to us as yet as it's internal between them and informed to us but they have no obligation to share that with us. **Being a reputed firm and entity we are going with good faith as of now**.

. . .

[9/29/20, 8:44:28 AM] Tri-Pharma, Inc: Between us two business owners that are in the same predicament and considering my involvement in this transaction due to the situation, I need details to "firm names", "entities" "attorneys" **so I know that we are not being strung along again like what happened previously when I was dealing with Brad and Garrett**. I think that is fair at this point due to my investment in the situation. I have no other agenda with this information than to have insight that this isn't a fairy tale so I can work out this extra time needed you mentioned above. Thanks

[9/29/20, 9:30:11 AM] Farid Ahmed: Correct, which is why I told you I will share some documentation this week as I receive it for your comfort. Yes, you are invested in this situation and deserve that...leave it with me. Will revert to u with it once I get it.

[9/29/20, 9:39:44 AM] Tri-Pharma, Inc: Much appreciated farid

[10/5/20, 8:16:41 AM] Tri-Pharma, Inc: Hello Farid, I hope you a had a good weekend. I never received any documentation?

[10/5/20, 11:02:27 AM] Farid Ahmed: Hi Todd, we couldn't get through documentation last week... hopefully some movement this week. Will send it as I get it.

[10/5/20, 11:04:40 AM] Tri-Pharma, Inc: Where is the status on this whole deal now?  Does t seem like anything is moving along and from the normal movement of ppe acquisitions and banks and attorneys, this appears to be really slow???

[10/5/20, 11:07:18 AM] Farid Ahmed: Tell me about it...I've been suspecting even the authenticity of it and questioned it in soo many angles, but after speaking to the chain from buy. Seems to actually check out and that this delay is no fault of theirs. **Just banks delaying the release of funds for some internal AML check**

[10/5/20, 11:07:36 AM] Farid Ahmed: Which is why still banking on it.

60.     Defendants   continued   to   represent   their   close   and   intertwined relationship to Tri-Pharma:

[10/6/20, 11:20:00 AM] Tri-Pharma, Inc: Hi Farid

[10/6/20, 11:20:32 AM] Tri-Pharma, Inc: What's the best way to schedule a conference call with all parties involved?

[10/6/20, 11:54:23 AM] Farid Ahmed: **I am happy to talk to u and get Garrett and Jason on call as well**...but the update stands exactly as it is Todd. **Resolution is already been worked on and we're just waiting for payday**.

61.     Then, Defendants began to hedge their communications with Tri-Pharma, indicating that Tri-Pharma would have to accept some form of payment terms because of issues with the Staples Deal.

[10/14/20, 8:06:28 AM] Tri-Pharma, Inc: Hi Farid. I never heard back from you yesterday. Can you please provide an update status to Tri-Pharma's refund. Thanks.

[10/14/20, 2:50:54 PM] Farid  Ahmed: Sorry Todd.

Still negotiating the best we can**. The reason we got stuck had to back off last minute is because the prices they offered to us last week was**

**12cents/mask...down from 38.5cents which they originally agreed 5 weeks ago.**

But given the market situation and our stock which is now stuck, has to move for us to even give u a payment plan. **Garrett and I are on calls trying to get a final bid before Friday to close the chapter. We will give u a payment plan with a down payment once we sell the current stock for whatever price.**

[10/14/20, 2:51:13 PM] Farid Ahmed: So please hold on. Will send u the plan soon.

[10/15/20, 9:46:35 AM] Tri-Pharma, Inc: Hi Farid, I don't understand. I didn't sign up for a payment plan? Are you talking about interest too? I am not sure I understand what you mean. **Why isn't Garrett and Brad not returning funds**? Thanks

[10/18/20, 11:42:07 PM] Tri-Pharma, Inc: Hi Farid, what is the plan? Never heard back from you. Thanks

[10/19/20, 3:14:36 AM] Farid Ahmed: **Hi Todd, We have not closed in on a bid as yet Todd. Will happen the following week, I'm told by Garrett and Jason.** 🤞🤍

Ty.

[10/19/20, 7:33:08 AM] Tri-Pharma, Inc: So all of the escrow attorney stuff of inspecting the product sites and waiting on the banking "know your customer" approval etc is no go?

[10/19/20, 7:46:42 AM] Farid Ahmed: **It's cleared, but no good to us at 8Cents/Masks on offer down from 40Cents which was what we originally agreed.**☹

[10/19/20, 7:47:00 AM] Farid Ahmed: **We refused to proceed at such a big loss.**

62.     Tri-Pharma's counsel sent a demand to Defendants for the return of

$3.85MM Deposit on October 19, 2020. [*See* Exhibit 13.]

63.     Upon receipt, Defendants Mann and Safe Harvest's counsel indicated that Defendant Mann would be responding to the letter. [*See* Exhibit 14 at 1.]

64.     To date, neither Defendant Mann, Safe Harvest, nor their counsel have substantively responded to the demand letter.

65.     Neither Defendant Beatty nor Lillian Bay have responded to the demand letter in any form or fashion.

66.     Meanwhile, as Defendants continued to work to minimize their losses, they continued to stonewall Tri-Pharma.

> [10/21/20, 7:18:29 AM] Tri-Pharma, Inc: Hi Farid, **is there no payment plan until you and Safe Harvest sell this inventory**? Plus you previously confirmed there were 220k boxes in the US. If you sell them at .12 cents a mask that's only 1.32mil.  I'm pretty confused.  You must be doing other business income from other deals that can be used for starting to pay back Tri-Pharma's refund?

> [10/26/20, 8:22:38 AM] Tri-Pharma, Inc: Hi Farid,  any new word on Tri-Pharma refund?  We are now past 5months since our order was canceled and zero refunds?  Please provide an update. Ty

> [10/27/20, 6:51:10 AM] Tri-Pharma, Inc: ?

> [10/27/20, 7:01:27 AM] Farid Ahmed: **Hi Todd, there has been a price crash, resulting in loss of the value of our goods. We are still disposing them now for as low as 8cents.**

> [10/27/20, 7:02:21 AM] Farid Ahmed: Still waiting on the client pickup and paydate. **This week or the next, Garrett's trying to conclude this quickly to avoid further loss.**

> [10/27/20, 7:03:22 AM] Farid Ahmed: **The balance we will have to pay you on other trades as you mentioned which we will do after closing this chapter first.**

[10/27/20, 9:57:40 AM] Tri-Pharma, Inc: Farid I am confused, are you and Garrett telling me that I will have to accept less money than my refund? Or that I will need to accept other items in lieu of cash? I'm not understand, as I never agreed to that.

[10/27/20, 10:01:12 AM] Farid Ahmed: No.no....I am saying we have lost on the cash value of the current assets int he geound **which we originally wanted to settle you in full on clearance of the goods**. Now that the value has gone down drastically due to market conditions and oversupply...**we will pay you part from the sale of the goods and the balance from other PPE ßupply trades that we are currently engaged in to pay you the balance of the full refund**.

67.     On October 26, 2020, counsel for Defendant Mann and Safe Harvest reiterated Defendant Mann's dealings with Mr. Ahmed and again represented that Defendants had the Funds available to for payment to Tri-Pharma, stating:

I briefly spoke with Garett in the middle of last week in which **he informed me that the funds were in the possession of Virtus/Farid, that Farid had spoken with Todd about returning them**, and that some sort of plan was enacted.

[See Exhibit 14 at 4 (bold added).]

68.     As of the filing of this Complaint, the $3.85MM Deposit remains in the control of Defendants, Mr. Ahmed, and Virtus.

69.     As of the filing of this Complaint, not a single penny of the $3.85MM Deposit has been returned to Tri-Pharma.

70.     Of note, when Tri-Pharma inquired why Defendants did not refund their retained commissions, Mr. Ahmed indicated he did not know.

[11/10/20, 7:19:58 AM] Tri-Pharma, Inc: **could you at least get Brad and Garrett to refund back the portion of the wire they kept for themselves? That would be a start towards the repayment**.

[11/10/20, 9:00:28 AM] Tri-Pharma, Inc: That makes sense, right?

[11/10/20, 9:13:49 AM] Farid Ahmed: **Not my decision or money to make them pay**.

## IV. The Conspiracy

71.     Defendants are culpable persons within the meaning of the applicable statutes.

72.     Defendants engaged in racketeering activity as defined in 18 U.S.C.A. § 1961(1), including wire fraud under 18 U.S.C.A. § 1343. Such wire fraud, and the related conduct, is more specifically identified and referenced above, to wit, the solicitation of wire transfers and the use of electronic means to defraud Tri-Pharma.

73.     Defendants' conspiracy, including the activity of the enterprise and the predicate acts of racketeering, affected interstate commerce. Specifically, Defendants' actions crossed state lines, into Georgia, from Texas, Florida, and perhaps Colorado, and also had international effect, reaching into China and Dubai.

74.     Defendants' actions constitute a pattern of racketeering under 18 U.S.C.A. § 1961(5) in that they were comprised of at least two acts of racketeering activity, the last of which occurred within ten years after the commission of a prior racketeering activity.

75.     Defendants' actions are related, continuous, and formed a pattern of racketeering. Such multiple actions include, but are not limited to,

    a.     Defendants' solicitation and receipt of the first portion of the $3.85MM Deposit;

b.      Defendants' solicitation and receipt of the second portion of the $3.85MM Deposit;

c.      Defendants' fraudulent and deceptive termination of the sale of the Masks; and

d.      Defendants' ongoing and continuous use of electronic means (text, email, and telephone) to induce Tri-Pharma to forebear taking certain actions to pursue or collect the $3.85MM Deposit from Defendants.

76.      Tri-Pharma, a "person" within the meaning of 18 U.S.C.A. § 1961(3), sustained injury to its business and property (*i.e.*, the loss of the $3.85MM Deposit) because of Defendants' violation of 18 U.S.C.A. § 1962.

77.      All of the acts complained of by Tri-Pharma in this Complaint occurred within the last 4 years, so this Complaint is timely.

### III. <u>CLAIMS</u>

### <u>Count One</u>
### (Breach of Contract against Selling Defendants)

78.      Tri-Pharma repeats and re-alleges the allegations contained in paragraphs 1 through 77 of this Complaint as if more fully set forth herein.

79.      There was a contract between Tri-Pharma and Selling Defendants for the purchase of 1 million Masks for $3.85 million, which Tri-Pharma tendered to Selling Defendants through the $3.85MM Deposit.

80.      On May 12, 2020, Selling Defendants agreed to return the $3.85MM Deposit because the sale of the Masks was cancelled.

81.     Selling Defendants have not returned the $3,850,000 to Tri-Pharma and are, therefore, in breach of the parties' agreement.

82.     As of the December 22, 2020, the $3,850,000 remains outstanding and owed to Tri-Pharma.

83.     The amount demanded by Tri-Pharma is a liquidated amount and, therefore, Tri-Pharma is legally entitled to pre-judgment interest at the legal rate of 6.66% per annum, or 0.0181967% per day, in Florida. (This is the rate determined by Florida's Chief Financial Officer, effective April 1, 2020.)

84.     Between May 12 and December 22, 2020, pre-judgment interest of $156,928.34 has accrued on the $3.85MM Deposit.

85.     Additional prejudgment interest will continue to accrue at the rate of $700.57 per day through date of judgment.

86.     As a result of their breach of the parties' agreement, Selling Defendants, jointly and severally, harmed Tri-Pharma in an amount to be proven at trial, but not less than $ 4,006,928.34, as of December 22, 2020, and additional prejudgment interest of $700.57 per day through date of judgment.

WHEREFORE, Tri-Pharma demands judgment against Defendants for compensatory damages, costs, and such other relief as this Court deems just and proper.

<u>Count Two</u>
**(Fraud and Conspiracy to Defraud against All Defendants)**

87.    Tri-Pharma repeats and re-alleges the allegations contained in paragraphs 1 through 86 of this Complaint as if more fully set forth herein.

88.    Defendants made specific representations to Tri-Pharma to induce it to agree to cancel its purchase of the Masks. Defendants did this because they wanted to sell the Masks for "more money." These representations included falsely telling Tri-Pharma that the Chinese government had limited their ability to provide the Masks to Tri-Pharma in a timely manner.

89.    Defendants' representations which, based on Tri-Pharma's reasonable reliance on the truth and accuracy of the representations, resulted in the cancellation of the sale of the Masks to Tri-Pharma, were false, and Defendants knew they were false at the time they were made to Tri-Pharma.

90.    As a result of Defendants' false representations to induce the cancellation of the sale of the Masks, Tri-Pharma has been harmed in an amount to be determined at trial, but not less than the gross profit that Tri-Pharma would have realized from its sale of the Masks to the VA medical centers.

91.    Because the gross profit that Tri-Pharma would have realized from its sale of the Masks to the VA medical centers is a liquidated amount, Tri-Pharma is also entitled to prejudgment interest on this gross profit amount.

92.    Defendants made a second grouping of representations to Tri-Pharma related to the return of the $3.85MM Deposit.

93.     Defendants' representations were made over the summer of 2020 with the intent to induce Tri-Pharma into not acting to recover the $3.85MM Deposit. Such forbearance was to Tri-Pharma's detriment, as the promised return of the $3.85MM Deposit in a few days turned into weeks, and now of months. The representations at issue are included in the Exhibits to this Complaint.

94.     As a result of its reasonable reliance on Defendants' representations regarding the cause of the cancellation and the return of the $3.85MM Deposit, Tri-Pharma has been harmed.

95.     As a result of Defendants' actions, Tri-Pharma has been harmed in an amount to be determined at trial by a jury.

96.     Defendants' false representations were intentional and wanton, in that Defendants both knew that their representations were false when made and that Tri-Pharma would be materially damaged by the false representations, but nonetheless consciously and intentionally made the representations with the goal of getting Tri-Pharma to transfer the $3.85MM Deposit, or were grossly negligent as the representations were made with such recklessness or want of care as to constitute a conscious disregard or indifference to Tri-Phama's rights and potential harm the representations might cause to Tri-Pharma.

WHEREFORE, Tri-Pharma demands judgment against Defendants for compensatory damages, reserving the right to seek punitive damages as permitted by law, prejudgment interest, costs, and such other relief as this Court deems just and proper.

## Count Three
## (Federal RICO for Wire Fraud)

97.    Tri-Pharma repeats and re-alleges the allegations contained in paragraphs 1 through 96 of this Complaint as if more fully set forth herein.

98.    Defendants, along with Mr. Ahmed and Virtus, formed an enterprise engaged in and whose activities affect interstate commerce. All Defendant were employed by or associated with the enterprise.

99.    Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Tri-Pharma. Specifically:

        a.    Defendants used wires, whether through the internet (email) or text messaging, to commit fraud as to the release of the $3.85MM Deposit from escrow and into their control;

        b.    Defendants used wires, whether through the internet (email) or text messaging, to commit fraud to induce Tri-Pharma to agree to the termination of its purchase of the Masks from Selling Defendants; and

        c.    Defendants used wires, whether through the internet (email) or text messaging, to commit fraud during the summer and fall of 2020 as to when and whether Defendants would return the $3.85MM Deposit to Tri-Pharma.

100.    Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of wire fraud under 18 U.S.C.A. § 1343.

101.    The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C.A. § 1961(5).

102.    Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C.A. § 1962(c).

103.    As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C.A. § 1962(c), Tri-Pharma has been injured in their business and property in that it has been deprived of the $3.85MM Deposit and the profits Tri-Pharma would have earned from its sale of the Masks, among other damages.

104.    Based on the foregoing, Defendants are liable to Tri-Pharma pursuant to 28 U.S.C.A. U.S.C.A. § 1964(c), and Tri-Pharma is entitled to recover threefold the damages it sustained and the cost of the suit, including a reasonable attorney's fee.

WHEREFORE, Tri-Pharma demands judgment against Defendants for threefold its actual damages, including prejudgment interest, attorney's fees and costs, and such other relief as this Court deems just and proper.

### Count Three
### (Federal RICO Based on Income Derived)

105.    Tri-Pharma repeats and re-alleges the allegations contained in paragraphs 1 through 104 of this Complaint as if more fully set forth herein.

106.    Defendants, along with Mr. Ahmed and Virtus, formed an enterprise engaged in and whose activities affected interstate commerce.

107.    Defendants used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise. Specifically:

a.      Defendants retained the Masks paid for with Tri-Pharma's $3.85MM Deposit and sold them to a third-party for a greater amount;

b.      Defendants improperly retained a portion of the fraudulently obtained $3.85MM Deposit and used and invested that income; and

c.      Defendants used, directly or indirectly, the $3.85MM Deposit to fund additional PPE-purchases for sale in the United States, such that the $3.85MM Deposit was a "capital injection/infusion" for Defendants' enterprise with Mr. Ahmed and Virtus. [Exhibit 7 (stating the purpose of the May 6, 2020 wire to Virtus)].

108.    The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C.A. § 1961(5).

109.    As direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C.A. § 1962(a), Tri-Pharma has been injured in their business and property in that it has been deprived of the $3.85MM Deposit and the profits Tri-Pharma would have earned from its sale of the Masks, among other damages.

110.    Based on the foregoing, Defendants are liable to Tri-Pharma pursuant to 28 U.S.C.A. U.S.C.A. § 1964(c), and Tri-Pharma is entitled to recover threefold

the damages it sustained and the cost of the suit, including a reasonable attorney's fee.

WHEREFORE, Tri-Pharma demands judgment against Defendants for threefold is actual damages, including prejudgment interest, attorney's fees and costs, and such other relief as this Court deems just and proper.

## Count Four
### (Federal RICO Conspiracy)

111.   Tri-Pharma repeats and re-alleges the allegations contained in paragraphs 1 through 110 of this Complaint as if more fully set forth herein.

112.   As set forth above, Defendants agreed and conspired to violate 18 U.S.C.A. § 1962(a) and (c).

113.   Defendants, along with Mr. Ahmed and Virtus, have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

114.   Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C.A. § 1962(a) and (c), in violation of 18 U.S.C.A. § 1962(d).

115.   As direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C.A. § 1962(d),

Tri-Pharma has been injured in its business and property in that it has been deprived of the $3.85MM Deposit and the profits Tri-Pharma would have earned from its sale of the Masks, among other damages.

116.   Based on the foregoing, Defendants are liable to Tri-Pharma pursuant to 28 U.S.C.A. U.S.C.A. § 1964(c), and Tri-Pharma is entitled to recover threefold the damages it sustained and the cost of the suit, including a reasonable attorney's fee.

WHEREFORE, Tri-Pharma demands judgment against Defendants for threefold its actual damages, including prejudgment interest, attorney's fees and costs, and such other relief as this Court deems just and proper.

<u>**Count Five**</u>
**(Civil Remedy For Criminal Action Under Chapter 772, Florida Statutes)**

117.   This is an action for recover of Civil Remedies for Criminal Acts under Chapter 772, <u>Florida Statutes</u>, against Defendants for damages that exceed $30,000.

118.   Tri-Pharma realleges and incorporates herein by reference Paragraphs 1 through 116 above.

119.   In violation of §§772.103, <u>Florida Statutes</u>, Defendants, with criminal intent, obtained and/or received proceeds directly or indirectly from a pattern of criminal activity, in the establishment or operation of an enterprise.

120.   Defendants were associated within this enterprise to conduct or participate, directly or indirectly, in such enterprise, through a pattern of criminal activity, as set forth herein.

-32-

121.    Defendants intended to injure, defraud and/or deceive Tri-Pharma into transferring the $3.85MM Deposit to them, represented to be funds that would be used exclusively for the purchase of the Masks for the benefit of Tri-Pharma, in order to utilize said funds to obtain product that Defendants then sold to other customers, while at the same time wrongfully retaining and refusing to return the $3.85MM Deposit or the proceeds from the sale of the Masks to Tri-Pharma.

122.    The activities undertaken by the Defendants show that they unlawfully, willfully, and knowingly combined, confederated, conspired and agreed to participate, in the commission of the above violations.

123.    As a direct and proximate result of Defendants' actions, Tri-Pharma has been damaged.

124.    Under §772.104, Florida Statutes, Tri-Pharma is entitled to recover three-fold its actual damages, as well as attorneys' fees and cost incurred in pursuing this action through both the trial and appellate courts.

WHEREFORE, Tri-Pharma demands judgment against Defendants for three-fold its actual damages, including prejudgment interest, attorneys' fees, costs, and such further relief as this Court deems just and proper.

**Count Six**
**(Action Under Florida's Deceptive**
**And Unfair Trade Practices Act)**

125.    This is an action against Defendants for violation of Florida's Deceptive and Unfair Trade Practices Act, § 501 et seq., Florida Statutes.

126.    Tri-Pharma realleges and incorporates herein by reference Paragraphs 1 through 124, above.

127.    Defendants' conduct alleged herein constitutes unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of trade and commerce.

128.    Defendants acted wantonly, willfully, intentionally, maliciously and with total disregard for Tri-Pharma's rights and property interests.

129.    Tri-Pharma reasonably relied on the representations and actions of Defendants to its detriment.

130.    As a direct and proximate result of Defendants' wrongful conduct, Tri-Pharma has been damaged.

131.    Tri-Pharma is entitled to recover attorney's fees under §501.2105, Florida Statutes.

WHEREFORE, Tri-Pharma demands judgment against Defendants for its actual damages, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## Count Seven
### (Constructive Trust and Injunctive Relief)

132.    Tri-Pharma repeats and re-alleges the allegations contained in paragraphs 1 through 130 of this Complaint as if more fully set forth herein.

133.    Defendants promised Tri-Pharma that if Tri-Pharma wired the $3.85MM Deposit to Defendants, Defendants would purchase Masks and have them

delivered to Tri-Pharma. The relationship between Tri-Pharma and Defendants was one of trust and confidence, as Tri-Pharma was relying on the truth and accuracy of Defendants representations regarding their ability to deliver the Masks in exchange for the $3.85MM Deposit, and their honesty and trustworthiness in the handling and release of the wired funds.

134.   In reliance on Defendants' promises outlined above, Tri-Pharma transferred the $3.85MM Deposit by wiring those funds to the escrow agents appointed by Defendants.

135.   By failing to deliver the Masks to Tri-Pharma and diverting the Masks to another customer for a higher purchase price, and thereafter failing and/or refusing to return the $3.85MM Deposit to Tri-Pharma, Defendants have been unjustly enriched at the expense of Tri-Pharma and have wrongfully retained the $3.85MM Deposit, or, alternatively, the proceeds derived from the sale of the Masks.

136.   Further, at least as to the commissions of approximately $532,000 retained by Defendants and obtained directly from escrow, because the transaction at issue was cancelled, there is no legitimate reason for Defendants to have retained those funds and not returned them upon demand to Tri-Pharma.

137.   Tri-Pharma has a legal and equitable interest in all portions of the $3.85MM Deposit, or, alternatively, the proceeds received by Defendants from the sale of the Masks, that is superior to that of Defendants and all other parties.

138.   Equity and good conscience will not permit Defendants to retain and enjoy the $3.85MM Deposit, or, alternatively, the proceed from the sale of the Mask, that were fraudulently and illegally taken from Tri-Pharma.

WHEREFORE, Tri-Pharma hereby requests that the Court grant the following relief:

a.   Impose a constructive trust upon all or any remaining portions of the $3.85MM Deposit that remains in the possession of any of the Defendants, or, in the alternative, upon the proceeds from the sale of the Masks;

b.   Temporarily enjoin Defendants, pending final adjudication and the granting of permanent relief, from moving, transferring, selling, encumbering, wasting, or otherwise dissipating the $3.85MM Deposit, or, alternatively, the proceeds from the sale of the Masks, pending further Order of this Court, and

c.   Grant Tri-Pharma such other relief as this Court deems just and proper.

## Count Eight
### (Conversion and Conspiracy to Convert Funds)

139.   Tri-Pharma repeats and re-alleges the allegations contained in paragraphs 1 through 138 of this Complaint as if more fully set forth herein.

140.   Tri-Pharma wired the $3.85MM Deposit to two escrow agents at Defendants' request. These funds were to be held in trust until the Masks were deliverable to Tri-Pharma.

141.   At Defendants' request and insistence, to facilitate the shipment of the Masks to it, Tri-Pharma agreed to the transfer of the $3.85MM from the escrow agents to Defendants or their designee(s).

142.   Instead of holding the $3.85MM Deposit for the specific and intended purpose for which the funds were deposited into escrow and for which release from escrow was authorized by Tri-Pharma, Defendants transferred the funds to Mr. Ahmed and Virtus in Dubai, where the funds were used for an unauthorized purpose and commingled with Virtus' and Defendants' funds to purchase additional PPE or masks.

143.   Such conduct by Defendants, and their agents in Dubai, constitutes conversion.

144.   Defendants, Mr. Ahmed, and Virtus conspired to obtain the $3.85MM Deposit from Tri-Pharma and to convert it to their own use, so that Virtus could purchase or otherwise acquire additional PPE inventory to sell.

145.   As a result of Defendants' actions, Tri-Pharma has been harmed in an amount to be determined at trial by a jury.

146.   Defendants conduct was intentional and wanton, in that Defendants induced Tri-Pharma to both transfer the $3.85 MM Deposit into escrow, and thereafter authorize release of the $3.85MM Deposit from escrow, by knowingly and consciously making promises and representations Defendants knew to be false when they were made, furthermore knowing that Tri-Pharma would be materially damaged by relying on the false promises and representations.   Alternatively,

Defendants' conduct was grossly negligent, as the promises were made with such recklessness and/or want of care as to constitute a conscious disregard or indifference to Tri-Phama's rights and to the potential harm Tri-Pharma might suffer as a result of Defendants' reckless and wanton conduct.

WHEREFORE, Tri-Pharma demands judgment against Defendants for compensatory damages, reserving the right to seek punitive damages as permitted by law, costs, and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Tri-Pharma demands a trial by jury of all claims so triable.

Respectfully submitted this, <u>28th</u> day of December, 2020.

WEINBERG WHEELER HUDGINS
GUNN & DIAL, LLC

<u>/s/ Ronald M. Schirtzer</u>
Ronald M. Schirtzer
Florida Bar No. 501662
Matthew Gomes
Florida Bar No. 117030
255 South Orange Avenue, Suite 1260
Orlando, Florida 32801
Phone: (407) 734-7000
Facsimile: (407) 930-9180
Email:  rschirtzer@wwhgd.com
mgomes@wwhgd.com
Secondary Email:
karmstrong@wwhgd.com
*Counsel for Plaintiff*

and

-38-

CHAUSMER LAW LLC

*/s/ Aaron Chausmer*
Aaron Chausmer
(pro hac vice pending)
Georgia Bar No. 119998
6075 Barfield Road
Atlanta, Georgia 30328
Phone: (678) 590-5140
Facsimile: (678) 561-1740
Email:  aaron@chausmer.law