## UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TRI-PHARMA, INC.,

      Plaintiff,

v.

SAFE HARVEST MEDICAL, LLC;
SAFE HARVEST, LLC; GARRETT
MANN; LILLIAN BAY HOLDINGS,
LLC; LILLIAN BAY MEDICAL, INC.;
and BRAD BEATTY,

CASE NO.
8:20-cv-03083-CEH-TGW

---

## THIRD AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Tri-Pharma, Inc., pursuant to Rule 15 and the Court's oral Order, dated May 26, 2022 [Doc. 160], and files this, its Third Amended Complaint for Damages, Injunctive Relief, and Demand for Jury Trial[1] ("the Complaint") against Defendants Safe Harvest Medical, LLC ("Safe Harvest Medical"); Safe Harvest, LLC doing business as "Safe Harvest Medical" ("Safe Harvest d/b/a SHM"); Garrett Mann; Lillian Bay Holdings, LLC ("Lillian Bay Holdings"); Lillian Bay Medical, Inc. ("Lillian Bay Medical");

---

[1] As discussed during the Court's hearing on May 26, 2022, this amended complaint is intended to correct a scrivener's error [Doc. 128] and to drop the previously asserted Count III against the Safe Harvest Defendants [Doc. 131].

and Brad Beatty (individually and collectively, "Defendants") and respectfully shows this Court as follows:

Pursuant to the Court's prior Order, this Complaint has been pared down factually, so as to limit its overall depth of detail while remaining in compliance with the Federal Rules of Civil Procedure. [Doc. 115 at 3 (expressing concern with the length of the prior Complaint at 186 paragraphs).]

## I. PARTIES, JURISDICTION, AND VENUE

1. Tri-Pharma is a corporation organized and existing under the laws of the State of Georgia. Tri-Pharma's principal place of business is located in Kennesaw, Georgia.

2. Safe Harvest Medical is a Wyoming limited liability company with its principal place of business in Texas, located at 3801 West Ursula Ave., Suite B, McAllen, Texas 78503. Safe Harvest Medical was previously served with summons and process in this action and is currently represented by counsel.

3. Safe Harvest d/b/a SHM is a Wyoming limited liability company with its principal place of business in Wyoming, located at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801. Safe Harvest d/b/a SHM was previously served with summons and process in this action and is currently represented by counsel. (Tri-Pharma is relying on representations of the Safe

Harvest Defendants' counsel that this entity is the proper Safe Harvest entity, as there is otherwise no indication – unlike Safe Harvest Medical – in its corporate records that this Safe Harvest entity is affiliated with Defendant Mann, a Texas resident.)

4.    Safe Harvest Medical is a successor-in-interest to Safe Harvest d/b/a SHM and it is a mere continuation of Safe Harvest d/b/a SHM, as evidenced by the fact that both entities use the "Safe Harvest Medical" moniker.

5.    Safe Harvest d/b/a SHM and Safe Harvest Medical are referred to herein individually and collectively as "the Safe Harvest Entities."

6.    At all times relevant to this action, the Safe Harvest Entities acted through Defendant Mann and Jason Tomlinson, who – according to the Safe Harvest Entities – are their "officers" and representatives.

7.    Defendant Mann is a resident of the State of Texas and, upon information and belief, resides at either 1201 South 1st Street, McAllen, Texas 78501 or 5111 North 10th #287, McAllen, Texas 78504. Defendant Mann was previously served and is represented by counsel.

8.    Lillian Bay Holdings is a Florida corporation with its principal business in Florida, located at 200 4th Street North, St. Petersburg, Florida 33701. Lillian Bay Holdings was previously served with summons and process

in this action. A default was entered against Lillian Bay Holdings on December 7, 2021. [Doc. 100.]

9.      Lillian Bay Medical is a Florida corporation with its principal business in Florida, located at 300 10th Street South, # 346, St. Petersburg, Florida 33705. Lillian Bay Medical was previously served with summons and process in this action. A default was entered against Lillian Bay Medical on December 7, 2021. [Doc. 99.]

10.     Lillian Bay Holdings and Lillian Bay Medical are referred to herein individually and collectively as "the Lillian Bay Entities."

11.     At all times relevant to this action, the Lillian Bay Entities acted through Defendant Beatty.

12.     Lillian Bay Medical is a successor-in-interest to Lillian Bay Holdings and it is a mere continuation of Lillian Bay Holdings. Further, the timing of certain corporate acts around the time of the transaction at issue show that Lillian Bay Medical is a fraudulent effort to avoid the liabilities of Lillian Bay Holdings.

13.     Upon information and belief, Lillian Bay Medical is simply Lillian Bay Holdings under a different name.

14.     Each named Defendant, along with non-parties Mr. Tomlinson, Farid Ahmed (a resident of Dubai, United Arab Emirates), and Virtus Facilities Management Services, LLC ("Virtus") (a corporate entity registered

and governed by DED Dubai Economic development), are co-conspirators with each other as to the tortious actions set forth herein.

15.    All of the statements referenced in this Complaint, including those by Mr. Tomlinson, Mr. Ahmed and Virtus, were made during the course of, and in furtherance, of the conspiracy set forth herein.

16.    As co-conspirators, statements of each Defendant, along with those by Mr. Tomlinson, Mr. Ahmed and Virtus, are binding on, and admissible against, the others. *See, e.g.,* Fed. R. Evid. 801(d)(2)(E).

17.    The Court has subject matter jurisdiction over the claims raised in this action pursuant to 28 U.S.C. § 1332(a)(1), as there is diversity of citizenship between Tri-Pharma and each of the Defendants, [Doc. 38], including individual members of Safe Harvest d/b/a SHM, Safe Harvest Medical, or Lillian Bay Holdings, and the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney's fee claims.

18.    Venue is proper in this judicial district pursuant to 18 U.S.C.A. § 1965 and 28 U.S.C.A. § 1391 because Lillian Bay Holdings, Lillian Bay Medical, and Defendant Beatty are subject to personal jurisdiction in this judicial district, reside in this district, and transact their affairs in this district. The remaining Defendants are joint tortfeasors and/or obligors with Lillian Bay Holdings, Lillian Bay Medical, and Defendant Beatty, whether as partners, joint obligors, or joint venturers.

## II. FACTUAL BACKGROUND

**A.    The Partnership/Joint Venture between Safe Harvest d/b/a SHM and Lillian Bay Holdings**

19.    Seeking to capitalize on the Covid-19 pandemic, Safe Harvest d/b/a SHM and Lillian Bay Holdings entered into a partnership or joint venture for the sale of PPE (individually or collectively, "the Sellers").

20.    The Sellers were involved in the purchase and sale of medical products, including personal protective equipment ("PPE"), such as N95 face masks, and other goods in the United States.

21.    In furtherance of their partnership or joint venture, the Sellers prepared marketing materials that jointly referenced both entities. Similarly, the marketing materials mentioned both Defendants Mann and Beatty, individually. [*See* Exhibit 1.]

22.    As shown by Exhibit 2 to this Complaint, "Safe Harvest Medical," through Defendant Mann, acquired the 1 million masks at issue in this action ("the Masks") from Virtus via its Purchase Orders 1008 and 1009.

23.    The escrow accounts involved in this action were established with two escrow agents for the joint benefit of the Sellers, but were nominally maintained in Lillian Bay Holding's name.

24.    The escrow agents who maintained the escrow accounts were chosen by Defendant Mann, were located in the McAllen, Texas area (where

Defendant Mann is located), and were known previously to Defendant Mann. One escrow agent, Francisco Guerrero, is Defendant Mann's personal attorney.

25.    The Sellers formed an association to carry on a business for profit. Both Defendants Mann and Beatty engaged in communications with Tri-Pharma in furtherance of the transaction at issue and each contributed labor towards the enterprise.

**B.    The Transaction Between Tri-Pharma and the Sellers**

26.    Defendant Mann sent Tri-Pharma a copy of Exhibit 1, the Sellers' joint marketing materials for the sale of PPE and masks.

27.    The Sellers agreed to sell the 1 million Masks to Tri-Pharma for $3.85 million.

28.    Pursuant to its agreement with the Sellers, Tri-Pharma tendered two equal, separate wires of $1,925,000 each to the Sellers' two designated escrow agents.

29.    On April 22, 2020, based on statements and representations by the Sellers, through Defendants Mann and Beatty, Tri-Pharma authorized the release of the initial $1,925,000 from escrow. [*See* Exhibit 3.]

30.    Unbeknownst to Tri-Pharma, from the initial wire transfer, at least $399,999.99 was wired by the Sellers' escrow agent as follows: $166,666.66 to Lillian Bay Holding's bank account in the Middle District of

Florida, and $266,666.66 to Safe Harvest d/b/a SHM's account in Texas. [*See* Exhibit 11.]

31.     On May 5, 2020, Tri-Pharma, based on representations by the Sellers, through Defendants Mann and Beatty, approved the release of the balance of its $3.85 million to Lillian Bay Holdings. [*See* Exhibit 5.]

32.     On May 6, 2020, an escrow agent, on behalf of the Sellers, wired the remaining $1,925,000 of Tri-Pharma's $3.85 million to Virtus in Dubai. [*See* Exhibit 6.]

## C.     The Cancellation of the Sale

33.     Soon after Tri-Pharma's $3.85 million was wired out of escrow, the Sellers invoked "force majeure" due to alleged actions by the Chinese government and induced Tri-Pharma to agree to cancel the contract.

34.     According to the Sellers, there would be delays in delivery of the Masks.

35.     The alleged adjusted shipping schedule was going to impact Tri-Pharma's commitments to the VA medical centers, its buyers.

36.     On May 5, 2020, Defendant Mann offered to allow Tri-Pharma to cancel its order for the Masks and to "have funds [Tri-Pharma's $3.85 million] returned." [Exhibit 9.]

37.     When Tri-Pharma did not immediately agree to cancel its contract, Defendants Mann and Beatty told Tri-Pharma on May 12, 2020,

that, on May 11, 2020, the Chinese Government had changed its export rules for PPE. [*See* Exhibits 7 and 8.]

38.    The Sellers and Tri-Pharma then agreed to cancel the transaction, with the Sellers agreeing to return Tri-Pharma's $3.85 million.

39.    Despite repeated verbal and written requests to return its $3.85 million, the Sellers did not do so.

40.    Tri-Pharma's counsel sent a demand to the Sellers, Defendant Mann, and Defendant Beatty for the return of its $3.85 million on October 19, 2020.

41.    As of the filing of the Initial Complaint, neither Defendant Mann, Defendant Beatty, nor the Sellers responded to the October 19, 2020 demand letter.

**D.    The Fraud**

1.    <u>The Inducement to Release the Escrowed Funds</u>

42.    Tri-Pharma relied on representations by the Sellers, through Defendants Mann and Beatty, when it authorized the release of funds from escrow.

43.    Among other representations, the Sellers, through Defendants Mann and Beatty, represented to Tri-Pharma that the Masks had been inspected and had passed "QC" – quality control – testing. [*See* Exhibit 10 at 1.]

-9-

44.    Tri-Pharma approved the May 5, 2020 release based on the Sellers' statements and representations that (1) it was needed before the manufacturer (Virtus) would allow the Masks to be shipped out of China, and (2) the Masks were available for shipment and were, in fact, at the departure port pending the release of Tri-Pharma's $3.85 million from escrow. [*See* Exhibits 7 at 1 and 10 at 14.]

45.    Upon information and belief, prior to the May 6, 2020 wire transfer, the Sellers, Defendant Mann, and Defendant Beatty knew or should have known that the Masks would not be available to deliver to Tri-Pharma when they made their representations to Tri-Pharma and when the Sellers sent the balance of Tri-Pharma's funds to Dubai on or about May 6, 2020.

   2.  The Fraudulent Statements Related to the Cancellation of the Transaction

46.    According to Defendant Mann, on behalf of the Sellers, "[they] will be returning [Tri-Pharma's] money for this order as Chinese Government sanctions have proven difficult to all of our satisfactions." [*See* Exhibit 10 at 14.]

47.    The Sellers' statements, through Defendants Mann and Beatty, attributing blame to the Chinese government were false.

48.    Based on the new representations from Defendants Mann and Beatty, Tri-Pharma agreed to cancel its purchase of the Masks on May 12, 2020.

49.    The Sellers induced Tri-Pharma to cancel its purchase of the Masks because they did not actually have the Masks and could not provide them to Tri-Pharma.

50.    The Sellers, through Defendants Mann and Beatty, received and controlled Tri-Pharma's $3.85 million, and they were the ones who agreed to return it to Tri-Pharma. [*See, e.g*., Exhibits 10 and 9.]

51.    At the time that the Sellers, through Defendants Mann and Beatty, represented that they would return Tri-Pharma's $3.85 million, they had no intention to actually return the funds to Tri-Pharma.

52.    Instead of returning Tri-Pharma's $3.85 million, (i) Safe Harvest d/b/a SHM retained at least $266,666.66, (ii) Lillian Bay Holdings retained at least $133,333.33, and (iii) the Sellers used the remaining funds towards the acquisition of other PPE for resale in the United States. [*See* Exhibit 11.]

53.    Lillian Bay Holding's lack of present intent to return Tri-Pharma's $3.85 million is evidence by its ongoing failure to return, at a minimum, the $166,666.66 that it received from Tri-Pharma's $3.85 million.

54.    Safe Harvest d/b/a SHM's lack of present intent to return Tri-Pharma's $3.85 million is evidence by its ongoing failure to return, at a minimum, the $233,333.33 that it received from Tri-Pharma's $3.85 million.

3.    <u>The Fraudulent Representations Related to the Return of Tri-Pharma's $3.85 million</u>

55.    On May 14, 2020, Defendant Mann represented that "it will only take a few days . . . to receive the full refund" of Tri-Pharma's $3.85 million. [Exhibit 10 at 9.]

56.    Then, on May 28, 2020, Defendant Mann represented that Tri-Pharma's $3.85 million would be returned "within next 7-10 days." [Exhibit 10 at 6.]

57.    According to Defendant Mann, as of June 5, 2020, Tri-Pharma's $3.85 million was in Dubai, but would be promptly returned to Tri-Pharma.

58.    In response to numerous inquiries regarding the status of the return of Tri-Pharma's $3.85 million in June and July, 2020, Defendants Mann and Beatty repeatedly informed Tri-Pharma that the funds were en route to it and being processed, but that delays were due to inefficiencies in the international financial system. [*See* Exhibits 12, 13, and 14.]

59.    On July 16, 2020, Defendant Beatty falsely told Tri-Pharma that "[t]he first return installment of this payment [the refund] came through ($2Million)" on or "around the 9th July, 2020," with the balance to "be sorted

on or before 15th July, 2020," [Exhibit 15 at 1.] When Defendant Beatty made this statement, he knew that it was false.

60.    In late July/early August, 2020, Defendants Mann and Safe Harvest d/b/a SHM referred Tri-Pharma to Mr. Ahmed, an executive with Virtus, regarding Tri-Pharma's $3.85 million.

61.    Upon information and belief, Defendants Mann and Beatty chose to direct Tri-Pharma to Mr. Ahmed and Virtus as a means to retain plausible deniability and to pass potential liability to them, as they were residents of Dubai and not readily subject to legal process in the United States.

62.    According to Mr. Ahmed on August 21, 2020, Defendants Mann and Safe Harvest d/b/a SHM, with Virtus, struck a deal with Staples for the sale of masks for $0.40 per mask, which would net them more than the $3.85 million owed to Tri-Pharma. There was no such deal, however.

63.    The Sellers, Defendant Mann, Defendant Beatty, and Mr. Ahmed made their false statements regarding the return of its $3.85 million to induce Tri-Pharma to delay action to collect or otherwise recover the funds.

64.    The Sellers, Defendant Mann, Defendant Beatty, and Mr. Tomlinson were specifically concerned about being sued by Tri-Pharma and made their statements with the specific intent of inducing Tri-Pharma into inaction.

65.     As of the filing of this Complaint, Tri-Pharma's $3.85 million remains in the control of Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings, or their co-conspirators, Mr. Tomlinson, Mr. Ahmed, and Virtus.

**E.     Defendants' Further Improper Conduct**

66.     Instead of returning Tri-Pharma's $3.85 million, the Sellers either used the proceeds to purchase additional products to be sold or they, with Virtus, used Tri-Pharma's $3.85 million to fund other aspects of their ongoing business operations.

67.     The Sellers, through Defendant Mann, Defendant Beatty, and Mr. Tomlinson, stated numerous times that they need to sell additional PPE products to third-parties to fund the payments to Tri-Pharma.

68.     Defendant Beatty used the funds Lillian Bay Holdings received from Tri-Pharma's $3.85 million to fund his personal living expenses. Defendant Beatty has spent a substantial portion of the funds such that he lacks the funds to return to Tri-Pharma.

69.     The tortious intent of Safe Harvest d/b/a SHM and Defendant Mann is further demonstrated by their established pattern and practice of inducing their victims to tender funds under false pretenses, only to later invoke "unexpected shipping delays" to induce their victims to cancel contracts for the purchase of PPE, at which point they are unable or unwilling

to return the previously tendered funds unless and until they can obtain the funds from other, unrelated matters.

70.    Another such victim of Defendant Mann and Safe Harvest d/b/a SHM was BioSafe Supplies, LLC ("BioSafe"), an entity located in Orlando, Florida.

71.    Defendant Mann and Mr. Tomlinson, on behalf of Safe Harvest d/b/a SHM, told BioSafe that PPE, such as masks were being shipped to it. [See Exhibit 16 (redacted to exclude immaterial information; Defendant Mann indicated BioSafe's PPE "just landed last night on US soil").]

72.    Defendant Mann and Mr. Tomlinson, on behalf of Safe Harvest d/b/a SHM, then invoked a change in Chinese law as a reason for issues delivering the PPE to BioSafe: "I am getting you the proof that those mask were made and shipped out of the NIOSH and FDA facility. The Chinese laws are changing on us constantly still, but the NIOSH (Medical) issue was part of the May 1st Law China imposed." [Exhibit 17 (redacted to exclude immaterial information).]

73.    Defendant Mann and Mr. Tomlinson, on behalf of Safe Harvest d/b/a SHM, then claimed there would be shipping delays to induce BioSafe to cancel its purchase contract.

74.    Finally, Defendant Mann and Tomlinson, on behalf of Safe Harvest d/b/a SHM, informed BioSafe that they could not deliver the PPE

and could not return the tendered funds until they "sell [other PPE] to get [their] money back." [Exhibit 17.]

75. Defendants Mann and Safe Harvest d/b/a SHM, and potentially others including Mr. Tomlinson, have another established pattern and practice of using escrow agents to receive funds from third parties then diverting the escrowed funds for their own use, either without prior authorization or under false pretenses.

76. For example, Defendant Mann's personal attorney is Francisco Guerrero in Texas. Mr. Guerrero has served multiple times as an escrow agent for Defendant Mann and Safe Harvest d/b/a SHM.

77. In one instance, in 2020, Defendant Mann, Safe Harvest d/b/a SHM, and Mr. Guerrero improperly used $300,000 of previously escrowed funds from persons located in Louisiana. [*See* Exhibit 18.]

**F. The Conspiracy to Defraud Tri-Pharma**

78. Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings are culpable persons within the meaning of the applicable statutes.

79. At the time that Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings offered to sell the Masks to Tri-Pharma in April, 2020, they – along with Mr. Tomlinson – knew that they did not actually have the Masks available for sale. [*See* Exhibit 19.]

80.    Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings had ongoing dealings with Virtus, in addition to Tri-Pharma's Mask-transaction. For example, even while Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings were representing to Tri-Pharma that its funds would be returned, Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings – or at least Defendant Mann and Safe Harvest d/b/a SHM – were  engaged in other business transactions with Virtus. [*See* Exhibit 20 (Virtus-issued Tax Invoice to "Safe Harvest Medical" and Defendant Mann for PPE gowns).]

81.    The various non-Tri-Pharma-related business dealings between Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings and Virtus continued into the Summer of 2020.

82.    Tri-Pharma's $3.85 million was used to fund Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' ongoing business dealings with Virtus, including those that were unrelated to Tri-Pharma.

83.    All of the communications between Mr. Ahmed and Tri-Pharma were made in furtherance of Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' prior fraudulent conduct and continued the conspiracy.

## III. <u>CLAIMS</u>

## <u>Count One</u>
## (Breach of Contract against the Sellers)

84.    Tri-Pharma realleges and incorporates Tri-Pharma realleges and incorporates Paragraphs 1 through 83, including Sections II(A), (B), and (C), above as if fully set forth herein.

85.    There was a contract between Tri-Pharma and the Sellers (Safe Harvest d/b/a SHM and Lillian Bay Holdings), jointly, for the purchase of 1 million Masks for $3.85 million, which Tri-Pharma actually tendered.

86.    On or about May 12, 2020, the Sellers agreed to return Tri-Pharma's $3.85 million because the sale of the Masks was cancelled.

87.    The Sellers have not returned the $3.85 million to Tri-Pharma and are, therefore, in breach of the parties' agreement.

88.    As of the December 22, 2020, the $3.85 million remains outstanding and owed to Tri-Pharma.

89.    The amount demanded by Tri-Pharma is a liquidated amount and, therefore, Tri-Pharma is legally entitled to pre-judgment interest at the legal rate of 6.66% per annum, or 0.0181967% per day, in Florida. (This is the rate determined by Florida's Chief Financial Officer, effective April 1, 2020.)

90.    Between May 12 and February 1, 2022, pre-judgment interest of $441,360.96 has accrued on the balance of $3.85 million.

91.    Additional prejudgment interest will continue to accrue at the rate of $700.57 per day through date of judgment.

92.    As a result of their breach of the parties' agreement, Lillian Bay Holdings and Safe Harvest d/b/a SHM, jointly and severally, harmed Tri-Pharma in an amount to be proven at trial, but not less than $4,291,360.96, as of February 1, 2022, and additional prejudgment interest of $700.57 per day through date of judgment.

WHEREFORE, Tri-Pharma demands judgment against Lillian Bay Holdings and Safe Harvest d/b/a SHM, joint and severally, for compensatory damages, costs, and such other relief as this Court deems just and proper.

## Count Two
### (Fraud and Conspiracy to Defraud against Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings)

93.    Tri-Pharma realleges and incorporates Tri-Pharma realleges and incorporates Paragraphs 1 through 83, including Sections II(D), (E), and (F), above as if fully set forth herein.

94.    In this Count, Tri-Pharma alleges that Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay – along with Mr. Tomlinson – for all of the alleged fraudulent conduct set forth in Section II(D) above engaged in a conspiracy to defraud Tri-Pharma.

95.     In this Count, Tri-Pharma alleges that Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay – along with Mr. Ahmed and Virtus – for all of the alleged fraudulent conduct set forth in Section II(D)(3) above engaged in a conspiracy to defraud Tri-Pharma.

96.     Each conspirator committed overt acts in furtherance of the conspiracy, including making statements to Tri-Pharma or engaging in conduct with the others in support of the fraud.

97.     The purpose of the conspiracy was to obtain $3.85 million from Tri-Pharma, retain the funds, and to then use those funds to realize more proceeds, as in a Ponzi- or pyramid-scheme, and then repay the $3.85 million to Tri-Pharma while retaining profits obtained from the use of those funds.

98.     In their first grouping of fraudulent statements, Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings made certain representations regarding the availability and readiness to be shipped of the Masks to induce Tri-Pharma to authorize the release of its $3.85 million from escrow.

99.     But for these statements, Tri-Pharma would not have authorized the release of its $3.85 million from escrow.

100.    At the time that Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings made these statements, they knew that the

statements were false and that not only were the Masks not available and ready to be shipped.

101.    At the time Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings induced Tri-Pharma to release the funds from escrow, they had no actual masks to sell to Tri-Pharma at that time.

102.    As a second grouping of fraudulent statements, Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings made additional specific representations to Tri-Pharma to induce it to agree to cancel its purchase of the Masks.

103.    Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings did this because they either wanted to sell the Masks for "more money," or because they knew that they did not actually have the Masks and could not tender them to Tri-Pharma.

104.    These representations included falsely telling Tri-Pharma that the Chinese government had limited their ability to provide the Masks to Tri-Pharma in a timely manner.

105.    Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings made a third grouping of false representations to Tri-Pharma related to the return of its $3.85 million.

106.    Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' representations were made over the summer of 2020 with the

intent to induce Tri-Pharma into not acting to recover its $3.85 million. Such forbearance was to Tri-Pharma's detriment, as the promised return of its $3.85 million in a few days turned into weeks, and then months.

107.    The representations at issue are included in the Exhibits to this Complaint and are identified above.

108.    Along with their representations, Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings provided Tri-Pharma with purported documentary evidence in support of their false statements.

109.    Tri-Pharma has been harmed by its reasonable reliance on each of the three above-identified groupings of representations by Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings.

110.    Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' three above-identified groupings of representations were false.

111.    Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings knew the representations were false at the time they made the statements to Tri-Pharma.

112.    As a result of Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' false representations, Tri-Pharma has been harmed in an amount to be determined at trial, but not less than $3.85 million plus the gross profit that Tri-Pharma would have realized from its sale of the Masks to the VA medical centers.

113.    Because the gross profit that Tri-Pharma would have realized from its sale of the Masks to the VA medical centers is a liquidated amount, Tri-Pharma is also entitled to prejudgment interest on this gross profit amount.

114.    Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' false representations were intentional and wanton, in that they both knew that their representations were false when made and that Tri-Pharma would be materially damaged by the false representations, Nonetheless, they consciously and intentionally made the representations with the goal of getting Tri-Pharma to transfer the its $3.85 million, or were grossly negligent as the representations were made with such recklessness or want of care as to constitute a conscious disregard or indifference to Tri-Pharma's rights and potential harm the representations might cause to Tri-Pharma.

WHEREFORE, Tri-Pharma demands judgment against Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings for compensatory damages, reserving the right to seek punitive damages as permitted by law, prejudgment interest, costs, and such other relief as this Court deems just and proper.

## **Count Three**
## **(Action Under Florida's Deceptive and Unfair Trade Practices Act Against Defendants Beatty and Lillian Bay Holdings)**

115.    This is an action against certain Defendants for violation of Florida's Deceptive and Unfair Trade Practices Act, § 501 *et seq*., <u>Florida Statutes</u>.

116.    Tri-Pharma realleges and incorporates Paragraphs 1 through 83 above as if fully set forth herein.

117.    Defendants Beatty and Lillian Bay Holdings' conduct alleged herein constitutes unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of trade and commerce.

118.    Defendants Beatty and Lillian Bay Holdings acted wantonly, willfully, intentionally, maliciously and with total disregard for Tri-Pharma's rights and property interests.

119.    Tri-Pharma reasonably relied on the representations and actions of Defendants Beatty and Lillian Bay Holdings to its detriment.

120.    As a direct and proximate result of Defendants Beatty and Lillian Bay Holdings' wrongful conduct, Tri-Pharma has been damaged.

121.    Tri-Pharma is entitled to recover attorney's fees under §501.2105, <u>Florida Statutes</u>.

WHEREFORE, Tri-Pharma demands judgment against Defendants Beatty and Lillian Bay Holdings for its actual damages, attorneys' fees, costs, and such other relief as this Court deems just and proper.

### Count Four
### (Unjust Enrichment Against Safe Harvest d/b/a SHM)

122.    Tri-Pharma realleges and incorporates Paragraphs 1 through 83 above as if fully set forth herein.

123.    In the alternative to its prior breach of contract claim against Safe Harvest d/b/a SHM, to the extent that there is not an enforceable agreement between it and Safe Harvest d/b/a SHM, Tri-Pharma asserts this claim for unjust enrichment to recover the $266,666.66 that Safe Harvest d/b/a SHM received from the $3.85 million that should have been returned to Tri-Pharma.

124.    Because the agreement at issue was cancelled, it would be inequitable and against the interests of justice for Safe Harvest d/b/a SHM to retain the $266,666.66 that was funded from Tri-Pharma's $3.85 million and which was paid in connection with a cancelled transaction, especially when Defendant Mann, on behalf of Safe Harvest d/b/a SHM agreed to the cancellation and expressly stated that he (or they) would return the $3.85 million to Tri-Pharma.

## Count Five
## (Conversion and Conspiracy to Convert Funds)

125.   Tri-Pharma realleges and incorporates Paragraphs 1 through 83 above as if fully set forth herein.

126.   Tri-Pharma wired its $3.85 million to two escrow agents at Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' request. These funds were to be held in trust until the Masks were deliverable to Tri-Pharma.

127.   At Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' request and insistence, to facilitate the shipment of the Masks to them, Tri-Pharma agreed to the transfer of the $3.85 million from the escrow agents to Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings or their designee(s).

128.   Instead of holding the $3.85 million for the specific and intended purpose for which the funds were deposited into escrow and for which release from escrow was authorized by Tri-Pharma, Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings either used the funds directly or transferred funds to Mr. Ahmed and Virtus in Dubai, where the funds were used for an unauthorized purpose and commingled with Virtus' and Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' assets  to purchase additional PPE.

129.   Such conduct by Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings, and their co-conspirators, Mr. Tomlinson, Mr. Ahmed, and Virtus, constitutes conversion.

130.   Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings, Mr. Tomlinson, Mr. Ahmed, and Virtus conspired to obtain Tri-Pharma's $3.85 million from Tri-Pharma and to convert it to their own use, so that Virtus could purchase or otherwise acquire additional PPE inventory to sell.

131.   As a result of Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' actions, Tri-Pharma has been harmed in an amount to be determined at trial by a jury.

132.   Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' conduct was intentional and wanton, in that Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings induced Tri-Pharma to both tender  the $3.85 million into escrow, and thereafter authorize release of the $3.85 million from escrow, by knowingly and consciously making promises and representations Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings knew to be false when they were made, furthermore knowing that Tri-Pharma would be materially damaged by relying on the false promises and representations.  Alternatively, Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings'

conduct was grossly negligent, as the promises were made with such recklessness and/or want of care as to constitute a conscious disregard or indifference to Tri-Pharma's rights and to the potential harm Tri-Pharma might suffer as a result of Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' reckless and wanton conduct.

WHEREFORE, Tri-Pharma demands judgment against Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings for compensatory damages, reserving the right to seek punitive damages as permitted by law, costs, and such other relief as this Court deems just and proper.

### Count Six
### (Fraudulent Transfers From Safe Harvest and To Safe Harvest Medical)

133.    Tri-Pharma realleges and incorporates Paragraphs 1 through 83 above as if fully set forth herein.

134.    Tri-Pharma is a creditor of Safe Harvest for the $3.85 million at issue in this action or at least the $266,666.66 of those funds that it received.

135.    Defendant Mann, with Mr. Tomlinson, created and controls/controlled Safe Harvest d/b/a SHM and Safe Harvest Medical.

136.    Upon information and belief, Safe Harvest d/b/a SHM transferred assets to Defendants Mann, Tomlinson, and Safe Harvest Medical

and deprived Safe Harvest d/b/a SHM of means to return Tri-Pharma's $3.85 million, or at least $266,666.66, of those funds that it received to satisfy its obligations to Tri-Pharma.

137.   Safe Harvest d/b/a SHM received either no consideration or less than reasonable equivalent value for the assets transferred to Defendant Mann and Mr. Tomlinson. Such assets include, but are not limited to, cash payments.

138.   Safe Harvest d/b/a SHM received either no consideration or less than reasonable equivalent value for the assets transferred to Safe Harvest Medical. Such assets include, but are not limited to, property rights in, or usage of, the "Safe Harvest Medical" name.

139.   Safe Harvest d/b/a SHM's transfers of the assets constitute fraudulent transfers which had the effect, individually or collectively, of leaving Safe Harvest d/b/a SHM unable to satisfy its debts as they came due and left Tri-Pharma with no reasonable means of recovery for the monies owed to it.

140.   As a result of its transfers, Safe Harvest d/b/a SHM is insolvent. To wit, as of May 21, 2021, Safe Harvest d/b/a SHM had not returned any funds to Tri-Pharma despite Defendant Mann and Safe Harvest d/b/a SHM agreeing to do so.

141.    Safe Harvest d/b/a SHM made its transfers of assets with the actual intent to hinder, delay or defraud their present or future creditors, including Tri-Pharma. *See*, *e.g*. § 726.106(b), <u>Florida Statutes</u>.

142.    Safe Harvest d/b/a SHM's transfer of assets are marked by multiple "badges of fraud," as indicated §726.105(2), <u>Florida Statutes</u>.

143.    Safe Harvest d/b/a SHM's transfers were fraudulent under the laws of the State of Florida and, possibly, the laws of other states.

144.    As a result of Defendant Mann and Safe Harvest d/b/a SHM's misconduct and transfers, Tri-Pharma is entitled to the funds and assets traced to the transfers and for avoidance of the transfers at issue, up to the then-current amount of the debt owed to Tri-Pharma, including prejudgment interest. *See, e.g*., § 726.108, <u>Florida Statutes</u>.

145.    As a result of Defendant Mann and Safe Harvest d/b/a SHM's misconduct and transfers, Tri-Pharma is entitled to:  (i) "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law," *see also Lee v. Wiand*, 603 B.R. 161 (M.D. Fla. 2018) (Honeywell, J.) (affirming constructive trust in case of fraudulent transfer); (ii) "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;" or (iii)  "[a]ppointment of a receiver to take charge of the asset transferred or of other property of the transferee. *See, e.g*., § 726.108, <u>Florida Statutes</u>.

## Count Seven

### (Fraudulent Transfers Between Lillian Bay Holdings and Lillian Bay Medical)

146.    Tri-Pharma realleges and incorporates Paragraphs 1 through 83 above as if fully set forth herein.

147.    Tri-Pharma is a creditor of Lillian Bay Holdings for the $3.85 million at issue in this action, or at least the $133,333.33 of those funds that it received.

148.    Defendant Beatty created and controls/controlled Lillian Bay Holdings and Lillian Bay Medical.

149.    Upon information and belief, Lillian Bay Holdings transferred assets to Defendants Beatty and Lillian Bay Medical and deprived Safe Harvest of means to return Tri-Pharma's $3.85 million, or at least $133,333.33, of those funds that it received to satisfy its obligations to Tri-Pharma.

150.    Lillian Bay Holdings received either no consideration or less than reasonable equivalent value for the assets transferred to Defendant Beatty. Such assets include, but are not limited, to cash which Defendant Beatty used to fund his personal living expenses, among other things.

151.    Lillian Bay Holdings received either no consideration or less than reasonable equivalent value for the assets transferred to Lillian Bay Medical.

Such assets include, but are not limited to, property rights in, or the usage of, the Lillian Bay website.

152.    Lillian Bay Holdings' transfers of the assets constitute fraudulent transfers which had the effect, individually or collectively, of leaving Lillian Bay Holdings unable to satisfy its debts as they came due and left Tri-Pharma with no reasonable means of recovery for the monies owed to it.

153.    As a result of its transfers, Lillian Bay Holdings is insolvent. To wit, as of May 21, 2021, Lillian Bay Holdings had not returned any funds to Tri-Pharma despite Defendant Beatty and Lillian Bay Holdings agreeing to do so.

154.    Lillian Bay Holdings made its transfers of assets with the actual intent to hinder, delay or defraud their present or future creditors, including Tri-Pharma. *See*, *e.g*. § 726.106(b), Florida Statutes.

155.    Lillian Bay Holdings' transfer of assets are marked by multiple "badges of fraud," as indicated §726.105(2), Florida Statutes.

156.    Lillian Bay Holdings' transfers were fraudulent under the laws of the State of Florida and, possibly, the laws of other states.

157.    As a result of Defendant Beatty and Lillian Bay Holdings' misconduct and transfers, Tri-Pharma is entitled to the funds and assets traced to the transfers and for avoidance of the transfers at issue, up to the

then-current amount of the debt owed to Tri-Pharma, including prejudgment interest. *See, e.g.*, § 726.108, Florida Statutes.

158.   As a result of  Defendant Beatty and Lillian Bay Holdings" misconduct and transfers, Tri-Pharma is entitled to: (i) "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law," *see also Lee v. Wiand*, 603 B.R. 161 (M.D. Fla. 2018) (Honeywell, J.) (affirming constructive trust in case of fraudulent transfer); (ii) "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;" or (iii) "[a]ppointment of a receiver to take charge of the asset transferred or of other property of the transferee. *See, e.g.*, § 726.108, Florida Statutes.

## Count Eight
## (Constructive Trust and Injunctive Relief Against All Defendants)

159.   Tri-Pharma realleges and incorporates Paragraphs 1 through 83 above as if fully set forth herein.

160.   Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings promised Tri-Pharma that if Tri-Pharma wired its $3.85 million into escrow, and then released the funds from escrow, , to Safe Harvest d/b/a SHM and Lillian Bay Holdings would acquire Masks and have them delivered to Tri-Pharma.

161.    The relationship between Tri-Pharma and Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings was one of trust and confidence, as Tri-Pharma was relying on the truth and accuracy of Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' representations regarding their ability to deliver the Masks in exchange for the Tri-Pharma's $3.85 million, and their honesty and trustworthiness in the handling and release of the wired funds.

162.    In reliance on Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings' promises outlined above, Tri-Pharma transferred its $3.85 million by wiring those funds to the escrow agents appointed by Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings.

163.    By failing to deliver the Masks to Tri-Pharma and diverting the Masks to another customer for a higher purchase price or using Tri-Pharma's $3.85 million to acquire other PPE (such as 15 million 3-ply masks) without Tri-Pharma's authorization, and thereafter failing and/or refusing to return the Tri-Pharma's $3.85 million to it, Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings have been unjustly enriched at the expense of Tri-Pharma and have wrongfully retained the $3.85 million at issue, or, alternatively, the proceeds derived from the sale of the Masks or other items acquired with Tri-Pharma's $3.85 million. *see also Lee v. Wiand*,

603 B.R. 161, 175 (M.D. Fla. 2018) (Honeywell, J.) ("the Florida Supreme Court has extended use of a constructive trust beyond instances involving fraud or abuse of a confidential relationship" and affirming equitable relief in Ponzi-scheme fraud case).

164.    Further, at least as to the payments of approximately $400,000 retained by Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings and obtained directly from escrow, because the transaction at issue was cancelled, there is no legitimate reason for Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings to have retained those funds and not returned them upon demand to Tri-Pharma.

165.    Tri-Pharma has a legal and equitable interest in all portions of its $3.85 million, or, alternatively, the proceeds received by Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings from the sale of the Masks, or otherwise derived from the use of any portion of its $3.85 million, that is superior to that of Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings and all other parties.

166.    Equity and good conscience will not permit Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings to retain and enjoy Tri-Pharma's $3.85 million, or, alternatively, the proceeds from the sale of the Masks or otherwise derived from the use of any portion of Tri-Pharma's $3.85 million, that were fraudulently and illegally taken from Tri-Pharma.

WHEREFORE, Tri-Pharma hereby requests that the Court grant the following relief:

a.    Impose a constructive trust upon all or any remaining portions of the Tri-Pharma's $3.85 million that remains in the possession of any of the Defendants, or, in the alternative, upon the proceeds from the sale of the Masks or otherwise derived from the use of Tri-Pharma's $3.85 million;

b.    Temporarily enjoin Defendants Mann, Safe Harvest d/b/a SHM, Beatty, and Lillian Bay Holdings, pending final adjudication and the granting of permanent relief, from moving, transferring, selling, encumbering, wasting, or otherwise dissipating any portion of Tri-Pharma's $3.85 million or, alternatively, the proceeds from the sale of the Masks or otherwise derived from the use of any portion of Tri-Pharma's $3.85 million, pending further Order of this Court, and

c.    Grant Tri-Pharma such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Tri-Pharma demands a trial by jury of all claims so triable.

Respectfully submitted this, the 31st day of May, 2022.

CHAUSMER LAW LLC

*/s/ Aaron Chausmer*
Aaron Chausmer
(Admitted pro hac vice)
Georgia Bar No. 119998
6075 Barfield Road
Atlanta, Georgia 30328
Phone: (678) 590-5140
Facsimile: (678) 561-1740
Email: aaron@chausmer.law
    - and -

BANKER LOPEZ GASSLER P.A.

*/s/ Keith Appleby*
Keith T. Appleby
Florida Bar No: 011028
501 E. Kennedy Boulevard
Suite 1700
Tampa, FL 33602
(813) 221-1500
Fax No: (813) 222-3066
kappleby@bankerlopez.com
service-kappleby@bankerlopez.com

*COUNSEL FOR PLAINTIFF*
*TRI-PHARMA, INC.*