**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**McALLEN DIVISION**

| | |
|---|---|
| TRI-PHARMA, INC., | |
| Plaintiff, | |
| v. | Case No. 7:22-CV-00231 (JURY DEMANDED) |
| SAFE HARVEST MEDICAL, LLC; SAFE HARVEST, LLC; GARRETT MANN; LILLIAN BAY HOLDINGS, LLC; LILLIAN BAY MEDICAL, INC.; and BRAD BEATTY, | |
| Defendants. | |

**TRI-PHARMA'S RENEWED MOTION FOR FINAL PARTIAL DEFAULT**
**JUDGMENT AGAINST THE LILLIAN BAY DEFENDANTS**

COMES NOW Plaintiff Tri-Pharma, Inc., pursuant to Fed. R. Civ. P. 54(b) and 55, and files this motion for a final partial default judgment against the Lillian Bay Defendants as to Tri-Pharma's Third Amended Complaint for Damages, Injunctive Relief, and Demand for Jury Trial ("the TAC")[1] [Doc. 163], and respectfully shows this Court as follows:

---

[1] On February 21, 2023, the Court dismissed Tri-Pharma's prior Motion for Final Partial Default Judgment against the Lillian Bay Defendants without prejudice because it was filed before the filing of the TAC, which the Court indicated was the operative complaint. The TAC is the same as Tri-Pharma's Second Amended Complaint, which was amended with leave of court to correct a scrivener's error and to dismiss certain claims against the Safe Harvest Defendants. [Docs. 128, 131, and 160.] The TAC asserts the same claims as the Second Amended Complaint and is based on the same facts, transactions, and circumstances as all prior complaints.

## I. INTRODUCTION

Tri-Pharma asserts various claims against Defendants Brad Beatty, Lillian Bay Holdings, LLC, and Lillian Bay Medical, Inc. (individually and collectively, "<u>the Lillian Bay Defendants</u>"). Some of these claims are solely against the Lillian Bay Defendants, while other are jointly asserted against both the Lillian Bay Defendants and the Safe Harvest Defendants based on their joint conduct. But this motion only seeks a final default judgment against the Lillian Bay Defendants as to those claims asserted directly against them. *It does not seek a default judgment as to the claims based on their joint conduct with the Safe Harvest Defendants.[2] Nor does this motion seek any relief against any of the Safe Harvest Defendants*.

The Lillian Bay Defendants are in default and a partial default judgment should be entered against them as to Counts Two (Fraud), Three (FDUTPA), Five (Conversion), and Seven (Fraudulent Transfers).

Finally, given the amount at issue and the nature of the claims, along with the Lillian Bay Defendants' failure to meaningfully participate in this action, Tri-Pharma shows that there is no just reason for delay and requests that the Court make the requisite findings set forth in Rule 54(b) and enter such partial default judgment as a final judgment.

Accordingly, Tri-Pharma requests that a partial default judgment as to liability be entered against the Lillian Bay Defendants promptly, that this matter be set down for a hearing as to Tri-Pharma's unliquidated damages, that a final partial default judgment then be entered against the Lillian Bay Defendants, and that this motion be **GRANTED**.

---

[2] *See, e.g., Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (judgment is not appropriate where some defendants are in default and others are not).

II. STATEMENT OF PERTINENT FACTS[3]

A. Procedural Posture

This action was originally filed on December 28, 2020. [Doc. 1.] The Lillian Bay Defendants – through counsel – then filed a motion to dismiss. Counsel for the Lillian Bay Defendants, however, moved to withdraw on June 18, 2021, approximately 3 months after first appearing in the case. [Docs. 26 and 53.] The Court granted that motion on July 15, 2021. [Doc. 62.]

Proceeding *pro se*, the Lillian Bay Defendants filed another motion to dismiss on August 2, 2021 in response to the First Amended Complaint. [Doc. 64.] Following a motion to strike and applications for entry of default as to Lillian Bay Holdings and Lillian Bay Medical, the Court ordered them to obtain counsel. [Docs. 65 and 66.] Following their persistent refusal to obtain counsel as ordered by the Court, defaults were entered against Lillian Bay Holdings and Lillian Bay Medical on December 7, 2021. [Docs. 99 and 100.]

The Court subsequently instructed Tri-Pharma to file an amended complaint by February 1, 2022 [Doc. 115], which it did. Defendant Beatty – the sole remaining Lillian Bay Defendant then *not* in default – did not respond to the Second Amended Complaint, and the Clerk entered a default against Defendant Beatty on March 1, 2022. [Doc. 126.]

The TAC was filed on May 31, 2022 to correct a scrivener's error and to dismiss certain claims against the other defendants, the Safe Harvest Defendants. [Docs. 128,

---

[3] Consistent with the applicable law, all of the facts set forth herein are obtained from the TAC, are based on well-pleaded factual allegations, and are deemed to have been admitted by the defaulting Lillian Bay Defendants.

131, and 160.] And, as the Court previously noted however, **"[t]he filing of the Third Amended Complaint did not impact the clerk's default as to Defendant Beatty."** [Doc. 188, at 2 n. 1 (bold added).]

Defendant Beatty, *pro se*, then filed his Motion for Reversal Removal of Default Judgment against the Lillian Bay Defendants Bradley Beatty [Doc. 173], which the Court considered under Rule 55(c). On July 11, 2022, the Court denied Defendant Beatty's motion to set aside the entry of default without prejudice, but permitted Defendant Beatty to refile his motion, provided he did so "within **14 days of the date of this Order**," or by July 25, 2022. [Doc. 188, at 5, ¶ 2 (bold in original).] **Defendant Beatty did not file anything by the Court's July 25 deadline.**

For almost 17 months – from July 15, 2021 until December 9, 2022 – the Lillian Bay Defendants proceeded without counsel, ignored court orders, were sanctioned, and otherwise refused to meaningfully participate in this litigation. Nor has the Lillian Bay Defendants' counsel done anything to address their defaults in the past four months since he first entered an appearance in this case.

## B. The Underlying Facts and Dispute

Tri-Pharma is a Georgia entity. [TAC, ¶ 1.] The Lillian Bay Defendants are all residents of Florida for diversity purposes. [Doc. 38; TAC, ¶¶ 8 and 9]. At all times, the Lillian Bay Defendants acted through Defendant Beatty. [*Id.*, ¶ 11.] The relationship between Lillian Bay Holdings and Lillian Bay Medical is simple: Lillian Bay Medical is a successor-in-interest to, and mere continuation of, Lillian Bay Holdings. [*Id.*, ¶¶ 12 and 13].

03644296.DOCX

In April 2020 – as the COVID Pandemic was beginning – Defendant Beatty and Lillian Bay Holdings, along with non-defaulting Defendants Garrett Mann and Safe Harvest, LLC, began efforts to sell personal protective equipment, such as N95 face masks. [TAC, ¶¶ 19-21 and ¶ 25 and Exhibit 1 thereto (Doc. 163-1).] The marketing materials identified *both* Safe Harvest, LLC and Lillian Bay Holdings as the sellers of the PPE (individually and jointly, "the Sellers"). [*Id.*]

In response to the Sellers' marketing, Tri-Pharma agreed to purchase 1 million N95 masks ("the Masks") from them for $3.85 million. [*Id.*, ¶ 27.] Tri-Pharma was then going to sell these masks to two VA medical centers. [*Id.*, ¶ 35.]

In connection with this purchase, Tri-Pharma wired the $3.85 million in two equal transfers to escrow agents designated by Defendant Mann, but into accounts held for the nominal benefit of Lillian Bay Holdings. [*Id.*, ¶¶ 23, 24, and 28.] Once the funds were in escrow, they were within the control of Lillian Bay Holdings and Defendant Beatty; he then directed the funds elsewhere. [*Id.*, ¶¶ 30-32 and Exhibits 4 and 11 thereto (Docs. 163-4 and 163-11).]

1) *Well-Plead Factual Allegations Regarding the First Grouping of Fraud*

On April 22, 2020, based on statements and representations by the Sellers, through Defendant Beatty, Tri-Pharma authorized the release of the initial $1,925,000 from escrow. [*Id.*, ¶ 29 and Exhibit 3 thereto (Doc. 163-3).] From this initial funding, the Lillian Bay Defendants kept, at least, $133,333.33. [*Id.*, ¶ 30 and Exhibit 11 thereto (Doc. 121-11).]

On May 5, 2020, Tri-Pharma, based on representations by the Sellers, through Defendant Beatty, approved the release of the balance of its $3.85 million to Lillian Bay

- 5 -

Holdings. [*Id.*, ¶ 31 and Exhibit 5 thereto (Doc. 163-5).] Lillian Bay Holdings and Defendant Beatty's false representations included: (a) that the Masks had been inspected and had passed "QC" – quality control – testing; (b) that the funds were needed before the manufacturer (Virtus) would allow the Masks to be shipped out of China; and (c) that the Masks were available for shipment and were, in fact, at the departure port pending the release of Tri-Pharma's $3.85 million from escrow. [*Id.*, ¶¶ 43-45.]

The Sellers, including Lillian Bay Holdings and Defendant Beatty, knew or should have known that the Masks would not be available to deliver to Tri-Pharma when they made their representations to Tri-Pharma and when Defendant Beatty sent the balance of Tri-Pharma's funds to Dubai on or about May 6, 2020. [*Id.*, ¶ 45.]

2) *Well-Plead Factual Allegations Regarding the Second Grouping of Fraud*

Soon after Tri-Pharma's $3.85 million was wired out of escrow, the Sellers invoked "force majeure" due to alleged actions by the Chinese government to induce Tri-Pharma to agree to cancel the contract. [*Id.*, ¶ 33.] According to the Sellers, there would be delays in delivery of the Masks. [*Id.*, ¶ 34.] The alleged adjusted shipping schedule was going to impact Tri-Pharma's commitments to the VA medical centers, its buyers. [*Id.*, ¶ 35.] The statements attributing blame to the Chinese government for the delays and other issues were false, however. [*Id.*, ¶ 47.]

On May 12, 2020, Defendant Beatty told Tri-Pharma that, on May 11, 2020, the Chinese Government changed its export rules for PPE. [*Id.*, ¶ 37.] The Sellers and Tri-Pharma then agreed to cancel the transaction, with the Sellers agreeing to return Tri-Pharma's $3.85 million. [*Id.*, ¶ 38.]

- 6 -

Lillian Bay Holdings and Defendant Beatty induced Tri-Pharma to cancel its $3.85 million purchase of the Masks because – despite their representations that the Masks were available for shipment and were, in fact, at the departure port pending the release of Tri-Pharma's $3.85 million from escrow, *supra* – they did not actually have the Masks and could not provide them to Tri-Pharma. [*Id.*, ¶ 49.] Further, when Defendant Beatty represented that the $3.85 million would be returned to Tri-Pharma, he had no intention of actually returning the funds to Tri-Pharma. [*Id.*, ¶¶ 51 and 53.]

### 3) *Well-Plead Factual Allegations Regarding the Third Grouping of Fraud*

After the parties cancelled the transaction, Lillian Bay Holding and Defendant Beatty continued to string Tri-Pharma along, promising to return its $3.85 million. [*Id.*, ¶ 58 and Exhibits 10 and 12-15 thereto (Docs. 163-10 and 163-12 to 163-14).] At times, Defendant Beatty even represented that a portion of the $3.85 million was in the United States. [*Id.*, ¶¶ 59 and Exhibit 15 thereto (Doc. 163-15).] Defendant Beatty knew this statement was false when he made it, [*Id.*, ¶ 59.]

Defendant Beatty made his various false statements regarding the return of its $3.85 million to induce Tri-Pharma to delay action to collect or otherwise recover the funds. [*Id.*, ¶ 63.] Meanwhile, during this time, Defendant Beatty used Tri-Pharma's funds, or at least $133,333.33 of them, as his personal "piggy bank" to pay his personal expenses. [*Id.*, ¶ 68.] The extra time also gave Lillian Bay Holdings and Defendant Beatty time to try to sell additional PPE to raise funds to pay Tri-Pharma its $3.85 million. [*Id.*, ¶ 67.]

As of the filing of the TAC in May 2022, none of Tri-Pharma's $3.85 million has been returned to it. [Id., ¶¶ 39 and 65.]

- 7 -

III. ARGUMENT AND LEGAL AUTHORITY

A. Applicable Standards

"Rule 55 of the Federal Rules of Civil Procedure authorizes the Court to enter a default judgment against a defendant who has failed to plead or otherwise defend a suit." *RLI Ins. Co. v. 2 G Energy Sys., LLC*, 581 F. Supp. 3d 817, 822 (W.D. Tex. 2020). And that it is what the Lillian Bay Defendants have done: they have not defended the suit.

The entry of a default judgment is a multi-step process. First, the clerk must enter a default against the defendant. *Alvarado Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 751 (N.D. Tex. 2020). This has been done and, as the Court noted in July 2022, the clerk's entry of default remained against all of the Lillian Bay Defendants, even after the filing of the TAC. [Doc. 188.] Rule 55(b)(2) then authorizes the Court to enter a default judgment upon motion.

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," *Nishimatsu Constr. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). But such factual admissions are, in and of themselves, insufficient for a default judgment. Rather, the Court must also find "'a sufficient basis in the pleadings for the judgment entered'." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)).

Also, because Tri-Pharma is seeking unliquidated damages, the Court must hold a hearing on them. *See* Fed. R. Civ. P. 55(b)(2)(B); *Baumann v. Bank of America, N.A.*, 734 Fed.Appx. 664, 671 (2018) ("we have held that damages for a default judgment

- 8 -

03644296.DOCX

may not be entered without an evidentiary hearing "unless the amount claimed is a liquidated sum or one capable of mathematical calculation").

Tri-Pharma further shows that there is no dispute that this Court has diversity-based jurisdiction over the Lillian Bay Defendants and that the Lillian Bay Defendants were previously served with summons and process, along with the operative Complaint at issue. [Docs. 25, 38, and 53.]

Finally, '[w]hen a case is transferred under § 1404(a), the transferee court must apply the substantive law that the transferor court would have applied." *MetaBank v. Conduent Bus. Servs., LLC*, No. 3:20-CV-1080-G, 2020 WL 6709967, at \*3 (N.D. Tex. Nov. 16, 2020). This means that Florida law applies to Tri-Pharma's claims. *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017) ("As a federal court sitting in diversity jurisdiction, [the transferor court would] apply the substantive law of the forum state, in this case Florida, alongside federal procedural law").

### B. A Default Judgment Against the Lillian Bay Defendants Is Warranted and Justified

Courts follow a three-part analysis when considering whether a default judgment should be entered: *first,* is the default judgment procedurally warranted; *second*, "courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment;" and, *third*, "what form of relief, if any, the plaintiff should receive." *Alvarado Martinez,* 444 F.Supp.3d at 752.

*First*, procedurally, a default judgment is warranted. The Lillian Bay Defendants have not filed responsive pleadings and defaults were properly entered against them. As a result, there are no material facts in dispute.

Further, the Lillian Bay Defendants' conduct in this case, including violation of court orders, did "bring the adversary process to a halt, effectively prejudicing [Tri-Pharma's] interests," *id.* There has been substantial prejudice to Tri-Pharma, including the incurring of additional legal fees and the gross passage of time. Next, the grounds for default are clearly established and there is no indication that the Lillian Bay Defendants' default was caused by a good faith mistake or excusable neglect.

The Court previously gave them ample time to obtain counsel and/or cure their default before entering the defaults against them. The Lillian Bay Defendants have acted willfully in not obtaining counsel during the 17-month period that this case substantively proceeded – through discovery and past the dispositive motion deadline. Instead, during this period, the Lillian Bay Defendants actively refused to meaningfully participate in discovery. Not only were the Lillian Bay Defendants sanctioned for misconduct at a deposition, [Doc. 138], but they ignored a Court order compelling their appearance at a deposition, [Doc. 153 and Exhibit 5 thereto (153-5)]. As the Fifth Circuit has recognized, "[g]iven [a defendant]'s repeated failures to comply with the district court's rules of procedure, as well as his significant delay in challenging the entry of default, the district court did not abuse its discretion by entering, and declining to vacate, a default judgment against" them. *Sindhi v. Raina*, 905 F.3d 327, 332 (5th Cir. 2018) (it is a "well-settled principle that a district court may 'enter default judgment pursuant to Rule 55 for failure of a party to comply with court rules of procedure'").

Tri-Pharma would suffer significant prejudice if the default judgment is not entered in its favor. This case is over two years old, and the Lillian Bay Defendants have been in default for almost all of it. Tri-Pharma has been deprived of its opportunity to fully and

- 10 -

properly develop its case against the Lillian Bay Defendants by their (in)action and willful misconduct. Moreover, the Court previously gave the Lillian Bay Defendants a second opportunity to address their default in July, 2022, but the Lillian Bay Defendants did not do so. Instead, another almost nine months have passed and, to date, the Lillian Bay Defendants have still not taken any steps to set aside their defaults.

*Second*, as shown below, there is more than sufficient basis in the pleadings for a judgment against the Lillian Bay Defendants, especially when considered under the notice-type pleading required under Rule 8. *RLI Ins. Co.*, 581 F. Supp. 3d at 825 ("[i]n conducting this analysis, the Fifth Circuit has looked to Rule 8 case law for guidance").

*Finally*, the Complaint shows that Tri-Pharma is entitled to monetary damages in an amount to be demonstrated at a hearing from the Lillian Bay Defendants for their misconduct.

## C. Count Two: Tri-Pharma's Claim for Fraud against Beatty and Lillian Bay Holdings

Although Count Two asserts a claim against Defendants Beatty and Lillian Bay Holdings for both fraud and conspiracy to defraud, this motion only seeks a default judgment against them for fraud; the conspiracy to defraud claims involves joint conduct with the Safe Harvest Defendants and is not appropriate for adjudication on a motion for default judgment.

The elements of a fraud claim are well-established. They are: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation." *Falsetto v. Liss*, 275 So. 3d 693, 697 (Fla. Dist. Ct. App. 2019).

Here, as admitted by the Lillian Bay Defendants, there were three sets of false representations. *First*, Lillian Bay Holdings and Defendant Beatty induced Tri-Pharma to release its $3.85 million from escrow. [Complaint, ¶¶ 98.] Tri-Pharma relied on the Sellers' representations when it agreed to release its $3.85 million from escrow. [*Id*., ¶¶ 42 and 109.] Further, Lillian Bay Holdings and Defendant Beatty knew that the representations were false. [*Id*., ¶¶ 45 and 100.] Tri-Pharma relied on their false representations when it authorized the release of the escrowed funds. [*Id*., ¶¶ 42, 44, and 99.] And, as a result, Tri-Pharma suffered an injury, such as the loss of its $3.85 million.

*Second*, Lillian Bay Holdings and Defendant Beatty made false representations that induced Tri-Pharma to agree to cancel the transaction. [*Id*., ¶ 47 and 102.] Moreover, when Defendant Beatty represented that the $3.85 million would be returned to Tri-Pharma, he had no intention of actually returning the funds to Tri-Pharma. [*Id*., ¶¶ 51 and 53.] Tri-Pharma relied on their false representations when it agreed to cancel the transaction. [*Id*., ¶ 102.] And, as a result, Tri-Pharma suffered an injury, such as the loss of its $3.85 million or the ability to receive the Masks and resell them.

And, *third*, Defendant Beatty's false representations on behalf of Lillian Bay Holdings induced Tri-Pharma to delay action towards the collection of its $3.85 million. [*Id*., ¶¶ 63, 64, and 106.] Defendant Beatty falsely represented that the $3.85 million were en route to escrow, but there were banking-related delays, and he later made false representations that the funds were in the United States. [*Id*., ¶¶ 58-59.] Meanwhile, Defendant Beatty frittered away Tri-Pharma's funds (at a minimum, the $133,333.33 retained directly by Lillian Bay Holdings) on his personal expenses thereby causing Tri-

03644296.DOCX

Pharma injury. Tri-Pharma relied on these false representations and was harmed. [*Id.*, ¶¶ 109, 111, and 112.]

The compensatory damages and potential punitive damages as to Tri-Pharma's fraud claim can be determined at a hearing in accordance with Rule 55(b).

### D. Count Three: Tri-Pharma's FDUTPA Claim against Beatty and Lillian Bay Holdings

Lillian Bay Holdings and Defendant Beatty are both residents of Florida, as required by FDUTPA. Conversely, Tri-Pharma need not be either a resident of Florida or a consumer to bring such a claim. *See, e.g., Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Cty., Inc.*, 169 So.3d 164, 167-9 (Fla. 4th DCA 2015) ("an entity does not have to be a consumer in order to have standing to bring a FDUTPA claim"). As noted in *Caribbean Cruise line, Inc.*,

> In viewing a cause of action under FDUTPA, to state a claim for injunctive and declaratory relief, Plaintiff must allege that Defendants engaged in a deceptive act or practice in trade and that Plaintiff is a person "aggrieved" by the deceptive act or practice. A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.

169 So.3d at 166-67. Here, Lillian Bay Holdings and Defendant Beatty's deceptive acts were twofold. *First*, they sold Masks that they did not have. *Second*, they engaged in deceptive acts and unfair practices when they falsely agreed to return Tri-Pharma's $3.85 million to induce it agree to cancel the contract, thereby excusing their performance under the agreement.

*Next*, those deceptive acts and unfair practices caused harm to Tri-Pharma. Because Tri-Pharma had an immediate need for the Masks due to its contracts with the

VAs, Tri-Pharma would not have wired $3.85 million to the escrow agents if it knew that there were no actual Masks.

*Finally*, Tri-Pharma suffered actual damages, such as the loss of its $3.85 million. Further, FDUTPA authorizes an award of attorney's fees to Tri-Pharma. *See* § 501.211(2), Fla. Stat. (2001) ("In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in § 501.2105"); *see also* § 501.2105(1)-(4), Fla. Stat. (2001).

Tri-Pharma's actual damages can be determined at a hearing in accordance with Rule 55(b), at which time Tri-Pharma will present evidence of its fees. Alternatively, counsel for Tri-Pharma can then, at the appropriate time, present an affidavit of its fees consistent with § 501.2105(2). *See, e.g., Altair S.R.L. v. His Wind, LLC*, No. 5:15-CV-329-OC-30PRL, 2016 WL 1728931, at *1 (M.D. Fla. Apr. 29, 2016) (recognizing the fee affidavit is submitted after a final default judgment is entered).

### E. Count Five: Tri-Pharma's Conversion Claim against Defendants Beatty and Lillian Bay Holdings

Count Five, like Count Two, asserts a claim against Defendants Beatty and Lillian Bay Holdings for both conversion and conspiracy to convert funds. Similarly, this motion only seeks a default judgment against them for conversion; the remainder of the claim, conspiracy to convert funds, involves joint conduct with the Safe Harvest Defendants and is not appropriate for adjudication on a motion for default judgment.

A party can be held liable for conversion if they "exercise dominion over the funds, knowing of [another]'s claim." *Joseph v. Chanin*, 940 So. 2d 483, 486 (Fla. 4th DCA 2006) (party "became liable for conversion once she refused [another]'s request to

03644296.DOCX

return the money" and "[b]y such act, . . ., exercised dominion over the funds inconsistent with [their] right to possess them").

Lillian Bay Holdings and Defendant Beatty received and controlled Tri-Pharma's $3.85 million, as alleged and shown by the various escrow-related documents attached to the Complaint. Then, they agreed to return it to Tri-Pharma and Tri-Pharma made numerous demands for its funds. But the funds were not returned. Tri-Pharma's $3.85 million was used to fund Defendant Beatty and Lillian Bay Holdings' ongoing business dealings with Virtus, including those that were unrelated to Tri-Pharma. [*Id.*, ¶ 82.] Defendant Beatty then used $133,333.33 for his personal expenses.

Tri-Pharma is entitled to a judgment against Lillian Bay Holdings and Defendant Beatty for conversion and is entitled to compensatory and punitive damages, as sought in the Complaint.

### F. Count Seven: Tri-Pharma's Fraudulent Transfers Between Lillian Bay Holdings and Lillian Bay Medical

Tri-Pharma is a creditor of Lillian Bay Holdings under Florida law. *See* § 726.102(4), Fla. Stat. (2013) ("'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.") As such, Tri-Pharma has standing to assert a claim for fraudulent transfer.

Next, there is no dispute that Lillian Bay Holdings was insolvent when it was making transfers to Lillian Bay Medical and Defendant Beatty. [Doc. ¶¶ 149 and 152.] § 726.103(2) ("a debtor who is generally not paying his or her debts as they become due is presumed to be insolvent"); *see RREF SNV-FL SSL, LLC v. Shamrock Storage, LLC*,

- 15 -

250 So. 3d 788, 790 (Fla. Dist. Ct. App. 2018) (debtor was insolvent where "he was not meeting his obligations").

This leaves the final issue: did Lillian Bay Holdings receive reasonably equivalent value for the asset. *See* § 726.105(1), Fla. Stat. The value of the asset is simple because the asset is cash; the value is the amount transferred out, or $3.85 million. Lillian Bay Holdings did not receive anything back, much less something approaching $3.85 million in value. [*Id.*, ¶ 9 150-151.] Further, the Complaint shows that Lillian Bay Holdings' transfers evidenced a significant number of statutory "badges" of fraud. [*Id.*, ¶155.] § 726.105(2), Fla. Stat.; *see also Gorrin v. Poker Run Acquisitions, Inc.*, 237 So. 3d 1149, 1155 (Fla. Dist. Ct. App. 2018) ("a combination of badges will justify a finding of fraud.")

When there are fraudulent transfers, a creditor's remedies are established by statute. § 726.108, Fla. Stat. Of the remedies, Tri-Pharma requests an attachment or other provisional remedy against the asset (*i.e.*, $3.85 million) transferred by Lillian Bay Holdings to Defendants Beatty or Lillian Bay Medical. § 726.108(1)(c), Fla. Stat. Tri-Pharma also requests that, upon the default judgment requested herein, that "the court so order[]" that Tri-Pharma "may levy execution on the asset (*i.e.*, $3.85 million) transferred or its proceeds," as contemplated by § 726.108(2).

IV. CONCLUSION

WHEREFORE, for good cause shown, Tri-Pharma requests that the Court enter a partial default judgment as to liability under to Counts Two (Fraud), Three (FDUTPA), Five (Conversion), and (Fraudulent Transfers) against Lillian Bay Holdings and Defendant Beatty; that this matter be set down for a hearing as to Tri-Pharma's

- 16 -

unliquidated damages at the Court's earliest opportunity; that the Court make the

requisite findings under Rule 54(b) for the entry of a partial final judgment; that a final

partial default judgment then be entered against the Lillian Bay Defendants, and that

this motion be **GRANTED**.

   This, the 10th day of April, 2023.

<div style="margin-left:40%;">

Respectfully submitted,

WEINBERG WHEELER HUDGINS GUNN &
DIAL LLC

*/s/ Aaron Chausmer*
_____

Aaron Chausmer
Attorney-in-Charge
achausmer@wwhgd.com
Georgia Bar No. 119998
(Admitted *Pro Hac Vice*)
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA 30326
Tel: 404.832.9518
Fax: 404.875.9433
   – and –
Joseph A. (Tony) Rodriguez
Email: ja.rodriguez@rcclaw.com
Texas State Bar No. 17146600
S.D. Fed. I.D. No. 10107
Alison D. Kennamer
Email: ad.kennamer@rcclaw.com
Texas State Bar No. 11280400
S.D. Fed. I.D. No. 12023
COLVIN, SAENZ, RODRIGUEZ &
  KENNAMER, L.L.P.
1201 East Van Buren St.
Brownsville, Texas 78520
(956) 542-7441
Fax (956) 541-2170
*CO-COUNSEL FOR PLAINTIFF TRI-
PHARMA, INC.*

</div>

03644296.DOCX

## CERTIFICATE OF CONFERENCE

I hereby certify that I attempted to confer with counsel for the Lillian Bay Defendants about the issues raised in this motion by telephone on April 10, 2023. Counsel for the Lillian Bay Defendants oppose the relief requested herein.

## CERTIFICATE OF SERVICE

The undersigned counsel further certifies that, on this date, a true and correct copy of the foregoing document was electronically served on all defendants as follows, either through the Court's CM/ECF system or via electronic service because they have not registered as filing users of the system. *See* LR5.1 and 5.3.

| Via Court's CM/ECF | Via Electronic Service |
|---|---|
| Michael Rodriguez | Matthew F. Hall |
| Atlas, Hall & Rodriguez, LLP | Jacob Coates |
| 222 N. Expressway 77 | Hill Ward Henderson |
| Suite 203 | 101 E. Kennedy Blvd. |
| Brownsville, Texas 78521 | Suite 3700 |
| Telephone: (956) 574-933 | Tampa, Florida 33602 |
| mrodriguez@atlashall.com | Matthew.Hall@hwhlaw.com |
| *Counsel for Lillian Bay Defendants* | Jacob.Coates@hwhlaw.com |
| | *Counsel of Record for Safe Harvest Defendants* |

This, the 10th day of April, 2023.

/s/ Aaron Chausmer
Aaron Chausmer
Georgia Bar No. 119998
*(admitted pro hac vice)*

- 18 -

03644296.DOCX